RAY v TRANSAMERICA INSURANCE COMPANY

OPINION OF THE COURT

1. NEGLIGENCE—DUTY—QUESTION OF LAW—QUESTION OF FACT.

Normally the duty of care owed a particular person is a question for the trial court; however, where the existence of a relationship between the parties determines the duty owed, and that relationship is not clear, the issue of duty may be properly given to the jury.

2. NEGLIGENCE—WORKMEN'S COMPENSATION—INSURER—VOLUNTARY UNDERTAKING—DUE CARE.

A workmen's compensation insurer which voluntarily and actively undertakes to assist an employer in performing his obligation to provide a safe place to work for his employees is held to a standard of due care.

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—AWARENESS OF A DANGER.

A plaintiff's awareness of the danger which resulted in injury to him is not by itself sufficient for a finding of contributory negligence as a matter of law; unless all reasonable men would agree that the plaintiff is guilty of contributory negligence, upon a view of evidence favorable to the plaintiff, then the question should be left to the jury.

4. WORKMEN'S COMPENSATION—THIRD-PARTY TORTFEASORS—APPORTIONMENT OF EXPENSES—INSURERS.

The theory behind the section of the Workmen's Compensation Act providing for the apportioning of reasonable expenditures

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur 2d, Negligence §§ 34, 37.
[2] 57 Am Jur 2d, Negligence §§ 37, 48.
[3] 57 Am Jur 2d, Negligence § 333.
[4, 6] 58 Am Jur, Workmen's Compensation §§ 68, 358, 543.
[5] 57 Am Jur 2d, Negligence § 37.
[6] 57 Am Jur 2d, Negligence § 123.
[7] 58 Am Jur, Workmen's Compensation § 564.
[8] 58 Am Jur, Workmen's Compensation § 200.

of recovery against a third-party tortfeasor between the plaintiff and his employer or insurance carrier is that in any recovery by the plaintiff from the third-party tortfeasor the employer's insurer is benefited and should therefore contribute to plaintiff's cost of recovery, but where the third-party tortfeasor is also the insurer, to allow a plaintiff an apportionment of expenses would be to force the insurer to underwrite plaintiff's litigation; in such a case a trial court acted properly in allowing setoff against the verdict of all compensation paid by the defendant and in disallowing a plaintiff's motion for expenses (MCLA 418.827).

5. NEGLIGENCE—LIABILITY—THIRD PARTIES.

One who undertakes to render services to another which he should recognize as necessary for the protection of a third person or his things is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking if (a) his failure to exercise reasonable care increases the risk of harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

6. NEGLIGENCE—RELIANCE—INSTRUCTIONS TO JURY.

Refusal to give a requested instruction to the jury on reliance in an action by an injured employee against a third-party tortfeasor was reversible error where plaintiff contended that the actions of defendant workmen's compensation insurer amounted to performance or the assistance of performance of his employer's original duty to provide a safe place in and a machine upon which to work and where plaintiff's reliance upon that undertaking is a relevant consideration.

CONCURRENCE IN PART, DISSENT IN PART BY LESINSKI, C. J.

7. WORKMEN'S COMPENSATION—MASTER AND SERVANT—SAFETY IN-SPECTIONS.

*The principles involved in the master-servant doctrine are not applicable to safety inspections performed for the employer of the plaintiff by the employer's workmen's compensation insurer because the Workmen's Compensation Act has abrogated the relationship in such cases where plaintiff is in covered employment, and the insurer should not be subrogated to the defenses of the employer even if the defense was available to the employer under the master-servant doctrine.*

8. WORKMEN'S COMPENSATION—THIRD-PARTY TORTFEASOR—NEGLI-
GENCE—RELIANCE.

   *In an action by an injured employee against an employer's
insurer under the third-party tortfeasor provisions of the Work-
men's Compensation Act alleging negligent safety inspections
precipitating plaintiff's injury the doctrine of reliance is misap-
plied; in such a case the issue is one of negligence on the part
of the defendant and contributory negligence on the part of the
plaintiff.*

Appeal from Wayne, Victor J. Baum, J. Submit-
ted Division 1 December 5, 1972, at Detroit.
(Docket No. 12042.) Decided April 26, 1973.

Complaint by Clarence Ray against Transamer-
ica Insurance Company under the third-party tort-
feasor provisions of the Workmen's Compensation
Act for injuries sustained in an industrial acci-
dent. Judgment for plaintiff. Plaintiff's motion for
apportionment of recovery and reasonable ex-
penses denied. Defendant appeals and plaintiff
cross-appeals the amount of the judgment. Re-
versed and remanded.

*Kelman, Loria, Downing & Schneider,* for the
plaintiff.

*Sugar, Schwartz, Silver, Schwartz & Tyler,* for
the defendant.

Before: LESINSKI, C. J., and J. H. GILLIS and PE-
TERSON,* JJ.

J. H. GILLIS, J. Plaintiff, Clarence Ray, was in-
jured while operating an industrial machine on
the premises of his employer, Chesley Industries,
Inc. Plaintiff brought this action in negligence
against his employer's insurer under the third-

---

   * Circuit judge, sitting on the Court of Appeals by assignment.

party tortfeasor provisions of the Michigan Workmen's Compensation Act.[1]

The case was before our Court previously on an interlocutory appeal. We concluded there that a compensation carrier is not immune from common-law tort liability for its own acts of negligence causing injury to the employee and that the compensation insurance carrier may be a third-party tortfeasor within the meaning of the act. We remanded the cause for trial on the issue of liability. *Ray v Transamerica Insurance Co,* 10 Mich App 55 (1968), *leave den* 381 Mich 766 (1968).

Plaintiff's cause was tried before a jury. It rendered a verdict for the plaintiff in the amount of $85,000. Subsequently plaintiff filed a motion for an order apportioning recovery and reasonable expenditures based on MCLA 418.827(6); MSA 17.237(827)(6). Plaintiff's motion was denied by the trial court. A judgment in the amount of $69,454 was then entered. Defendant, Transamerica Insurance Co., filed a timely appeal and the plaintiff cross-appealed in regard to the amount of the judgment entered by the trial court.

Plaintiff had operated the same machine on which he was injured for about five years. About 1-1/2 years prior to the injury, the factory moved from a location in Detroit to Farmington. During the move a cover protecting a gear at the upper right rear of the press operated by the plaintiff was lost. When a piece of stock fell behind the machine, plaintiff reached for it and tripped. His hand was caught in the unprotected gear when he tried to brace himself resulting in loss of his hand and part of his forearm.

---

[1] This provision is presently found in MCLA 418.827; MSA 17.237(827), but at the time the suit was instituted the correct citation of the statute was MCLA 413.15; MSA 17.189.

Defendant's "insurance engineer", Mr. James McCarthy, visited the plant once while it was in Detroit and several times after its relocation in Farmington. He testified that he was the "eyes of the insurer", and that his job was to give guidance and education in safety matters. He recommended that the plaintiff's machine be equipped with "dual micro control" safety switches so that plaintiff could not operate his machine without both hands removed from the vicinity of the cutting blade. The record indicates that this recommendation was discussed with a supervisory employee of Chesley. This recommendation was rejected by Chesley. McCarthy also asked that a wire guard be placed in front of the operating surfaces. It is not clear from the record whether this was an alternative suggestion; however, Chesley complied and fabricated the guard in the shop. McCarthy stated that he at no time made representations that he or his company was taking over any safety engineering function. He admitted having seen the plaintiff's machine on October 2, 1964, the Friday immediately before the accident. He had not noted then, nor had he ever been told, that the gear guard had been removed.

Further testimony of Mr. McCarthy elicited other facts. Even if he had noticed the uncovered gear, he stated that he probably wouldn't have recommended that it be covered because it was highly unlikely that anyone would be working near it. He had no authority to order unsafe machines shut down, and his recommendations were not uniformly followed in this plant or any other. It was further established that the rate paid by the insured would not be changed by dangerous conditions and that safety conditions had nothing to do with the rate that was charged by the insurer for the policy.

Plaintiff continued work at Chesley Industries until trial in January, 1971. He admitted that he knew the guard was off his machine, but claimed that he had told his supervisors of the absence of the cover prior to his injury.

I

Defendant seeks review of our prior decision in the interlocutory appeal, based on a statute[2] enacted after the decision in that appeal. While the new statutory language is somewhat persuasive of legislative intent in the statute which was before the Court, closer examination reveals that the entire Workmen's Compensation Act was repealed and a new act enacted in 1969. The Legislature is presumed to know statutory construction given by the courts. *Lenawee County Gas & Electric Co v City of Adrian,* 209 Mich 52 (1920); *Dept of Conservation v Connor,* 321 Mich 648 (1948). Had the

---

[2] The change referred to is cited below and is found in 1972 PA 285, eff October 30, 1972:

MCLA 418.131; MSA 17.237(131). " * * * The right to the recovery of * * * benefits as provided in this act shall be the employee's exclusive remedy against the employer. As used in this section and section 827 'employee' includes the person injured, his personal representatives and any other person to whom a claim accrues by reason of the injury to or death of the employee, and 'employer' includes his insurer, a service agent to a self-insured employer, and the accident fund insofar as they furnish, or fail to furnish, safety inspections or safety advisory services incident to providing workmen's compensation insurance or incident to a self-insured employer's liability servicing contract."

MCLA 418.827; MSA 17.237(827). * * *

"(8) The furnishing of, or failure to furnish, safety inspections or safety advisory services incident to providing workmen's compensation insurance, or pursuant to a contract providing for safety inspections or safety advisory services between the employer and a self-insurance service organization or a union shall not subject the insurer, self-insured service organization or the accident fund, or their agents or employees, or the union, its members or the members of its safety committee, to third party liability for damages for injury, death or loss resulting therefrom."

Legislature felt its intent violated by *Ray,* we conclude it would have altered the statute in 1969. See Judge O'HARA's concurring opinion in *Banner v Travelers Ins Co,* 31 Mich App 608, 611–612 (1971). We hold that *Ray* was the proper interpretation of legislative intent in MCLA 413.15; MSA 17.189.

Much is made of the economic argument that if insurers are subjected to unlimited liability for faulty inspection, they will cease all inspection to the detriment of workers, employers, and the public. We find this argument unpersuasive, especially in light of the changed statute. A recent case in the Sixth Circuit Court of Appeals said:

"Just as insurance carriers are voluntarily induced into insuring workmen's compensation risks by the premiums they charge, so also do these carriers voluntarily engage in safety inspections to enhance their economic returns from their insurance coverage. Promises to make safety inspections are not taken because there is a workmen's compensation law, but are made to reduce industrial accidents and enhance carrier profits." *Bryant v Old Republic Insurance Co,* 431 F2d 1385, 1388 (CA 6, 1970).

We find nothing in the governing statute which suggests that our Legislature sought to encourage such inspections by granting immunity to an insurance carrier where it negligently inspects the premises of its insured. *Ray, supra.*

## II

The further issue which must be resolved is whether plaintiff's theory that defendant had undertaken to furnish safety inspection, giving rise to a duty to use reasonable care on behalf of the plaintiff, is supported by the record.

Normally the issue of duty owed a particular person is a question for the trial court. *Elbert v Saginaw,* 363 Mich 463, 476 (1961). However, where, as here, the existence of a relationship between the parties determines the duty owed, and that relationship is not clear, the issue of duty may be properly given to the jury. *Bonin v Gralewicz,* 378 Mich 521, 526–527 (1966).[3]

This is not to say that a mere failure to suggest or recommend a safety change would impose a duty and liability. It would not. On the facts adduced, the jury must have found that defendant had voluntarily and *actively* undertaken to assist Chesley Industries in performing the obligation owed by every employer to his employees—to provide a safe place to work. Having undertaken the duty, defendant is held to a standard of due care.

It is clear to us that the jury found a duty existed on the part of the defendant, that duty extended to the plaintiff because the plaintiff was clearly within the orbit of risk created by the negligent performance of the duty undertaken. The record supports this finding of the jury.

### III

Before reaching the issue on which this appeal

---

[3] Dean Prosser puts it this way:

" * * * [T]he determination of any question of duty—that is, whether the defendant stands in such a relation to the plaintiff that the law will impose upon him any obligation of reasonable conduct for the benefit of the plaintiff [is for the court]. This issue is one of law, and is never for the jury.

* * *

"In any case where there might be reasonable difference of opinion as to the foreseeability of a particular risk, the reasonableness of the defendant's conduct with respect to it, or the normal character of an intervening cause, the question is for the jury, subject of course to suitable instructions from the court as to the legal conclusion to be drawn as the issue is determined either way." Prosser, Torts (3d ed), § 52, pp 329–330.

*See, also,* Harper & James, Torts, § 18.8, pp 1058–1061.

is decided, we will treat some of the other issues raised in this case. We do so as the area of disagreement of the panel is limited to a narrow issue which is found in section V of this opinion.

Aside from defendant's other assignments of error, it suggests that plaintiff was contributorily negligent as a matter of law in failing to tell anyone about the missing gear cover. We hold awareness of the danger is not by itself sufficient for a finding of contributory negligence as a matter of law. *Pigg v Bloom,* 22 Mich App 325 (1970). On reviewing this issue we rely on the often stated principle that unless *all* reasonable men would agree that the plaintiff is guilty of contributory negligence, upon a view of evidence favorable to the plaintiff, then the question should be left to the jury, *Ingram v Henry,* 373 Mich 453, 455 (1964); *Bay City v Carnes,* 3 Mich App 623, 625 (1966), as it was properly in this case.

## IV

Plaintiff in his cross-appeal contends that the trial court erred in entering judgment in the amount of $69,454 after the jury's verdict for plaintiff was $85,000. Plaintiff also claims the trial court should have entered an order apportioning the recovery and the expenses between the plaintiff and defendant.

The language of the Workmen's Compensation Act found in MCLA 418.827; MSA 17.237(827) provides:

"(5) In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or his dependents or personal representative would be entitled to recover in an action in tort. Any

recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or carrier for any amounts paid or payable under this act to date of recovery and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payments of compensation benefits.

"(6) Expenses of recovery shall be the reasonable expenditures, including attorney fees, incurred in effecting recovery. Attorney fees, unless otherwise agreed upon, shall be divided among the attorneys for the plaintiff as directed by the court. Expenses of recovery shall be apportioned by the court between the parties as their interests appear at the time of the recovery."

The theory behind the statute is that when the injured plaintiff recovers against a third-party tortfeasor, the insurer is benefited and should therefore contribute to plaintiff's cost of recovery. *Potter v Vetor,* 355 Mich 328 (1959). This case is different in that Transamerica is most definitely not benefiting from Mr. Ray's recovery. Indeed, the parties are adversaries in all respects. To allow plaintiff's claim would be to force the insurer to underwrite plaintiff's litigation. The trial court acted properly in allowing set-off against the verdict of all compensation paid by the defendant and in disallowing plaintiff's motion for expenses.

## V

The panel is in total agreement with the preceding sections of this opinion. The panel, however, does split on the issue of the need for the trial court to give a jury instruction on the issue of reliance on defendant's safety inspection by the plaintiff or Chesley Industries.

The panel is also in full agreement and does

hold the rule in Michigan governing actions of the nature involved in this appeal to be that enunciated in 2 Restatement Torts, 2d, § 324A, p 142, which provides:

"One who undertakes, gratuitously or for consideration to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, *if*

"(a) his failure to exercise reasonable care increases the risk of harm, *or*

"(b) he has undertaken to perform a duty owed by the other to the third person, *or*

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." (Emphasis supplied.)

It is important to note that the rule enunciated and as found in the Restatement provides for three alternative theories of recovery. Neither the rule nor the Restatement requires that a combination of, or all of, the theories be proven to establish liability. The rule is stated in the disjunctive. Proof of either theory is a valid basis for recovery.

Plaintiff's case proceeded on the theory that defendant had undertaken to perform a duty owed by the employer to his employee to provide a safe place to work. The essence of the theory is found in the above quoted position of the Restatement labeled subparagraph (b).

It is the position of the plaintiff that he is not required to prove an increase in risk of harm or that he relied on the inspection for his safe employment. The plaintiff's claim does not rest on reliance upon a bare unfulfilled promise to inspect; rather, it is founded on McCarthy's negligent inspection and exercise of his undertaking.

The language of Justice Cardozo in *Marks v Nambil Realty Co, Inc,* 245 NY 256, 259; 157 NE 129, 130 (1927), is appropriate here: "His [plaintiff's] case is made out when it appears that by reason of such negligence what was wrong is still wrong, though prudence would have made it right. * * * The inference is permissible that the [conduct by defendant] cloaked the defect, dulled the call to vigilance, and so aggravated the danger."[4]

We think the approach of plaintiff is shortsighted if, as plaintiff contends, the actions of defendant amounted to performance or the assistance of performance of his employer's original duty to provide a safe place in and a machine upon which to work. In such a situation reliance on *that* undertaking is a relevant consideration. As the Restatement of Agency indicates:

"The duty of a master as to working conditions extends to the maintenance, inspection, and repair of the premises in his control upon which his servants are employed and of the implements which they use * * * ." 2 Restatement Agency, 2d, § 503, p 458.

The comment to the above-quoted section has particular application:

"A master is not liable for harm caused by instrumentalities used by the servant if the servant is given the opportunity and has the capacity to inspect and to test them before use, or could readily see their defects, *unless the agent relies, as the master has reason to know he would, upon a prior inspection by the master.*" 2 Restatement Agency, 2d, § 503, comment d, p 459. (Emphasis supplied.)

Whether or not there are sufficient facts in the record which show plaintiff or his employer relied

---

[4] *See also,* Prosser, Torts (3d ed), § 54, pp 342–343; 2 Restatement Torts, 2d, § 324A(b), and comment d, pp 142–143.

on defendant to make careful safety inspections, no jury instruction adequately called that issue to their attention. We pay careful attention to the facts, as shown in the record, that defendant, through its agent McCarthy, had no authority to order unsafe machines shut down, nor were its recommendations followed in all cases. Even if McCarthy knew the safety feature was missing, all he could have done was call that to the attention of plaintiff's employer in the hope it would be replaced. However, *plaintiff knew* the guard was missing.

Whether, in light of those facts, defendant's conduct "cloaked the defect, dulled the call to vigilance, and so aggravated the danger" *(Marks v Nambil Realty Co, Inc, supra)* is a question for the jury.

Under the facts of this case, the defendant was entitled to a jury instruction on reliance.

Reversed and remanded; costs to defendant.

PETERSON, J., concurred.

LESINSKI, C. J. *(concurring in part; dissenting in part).* I agree with the opinion of the majority except as to the result and that part of section V of the majority's opinion that holds the trial court was required to instruct on the issue of reliance. I would affirm the judgment with costs to plaintiff.

On the issue of reliance, I find the position of the majority to be inconsistent. If the rule in Michigan is as we agree and state it to be, then clearly reliance by either the plaintiff or his employer is not a factor as to the theory of recovery under subparagraph (b) of the Restatement. 2 Restatement Torts, 2d, § 324A, p 142.

The majority on this issue would unduly in-

crease the burden of the plaintiff's proofs because
the inspections were performed for the employer
of the plaintiff. The majority must of necessity
invoke some of the principles involved in the
master-servant doctrine to arrive at this position.
This writer does not find them applicable because
the Workmen's Compensation Act has abrogated
the relationship in cases such as plaintiff's, who is
in covered employment. Further, the majority is in
error in *sub silentio* subrogating the defendant to
the defenses of the employer if, *arguendo,* the
defense was available to the employer under the
master-servant doctrine.

The doctrine of reliance in this case is misap-
plied. In an action against the defendant by the
employees, more appropriately the question is one
of negligence on the part of the defendant and
contributory negligence on the part of the plaintiff.
The fact that plaintiff may have known that the
guard that brought about his injury was missing
goes to the question of contributory negligence.
The jury decided this issue against the defendant.

The record in this case shows the defendant
discussed with plaintiff the safe operation of the
machine that caused his injury just days before
the accident; the fact that defendant did not alert
plaintiff to the danger of the unguarded gears is
evidence of an improper inspection and safety
instruction.

While it is true the employer had no master
safety program and the defendant was without
authority to shut down a machine, the defendant
was not without recourse. With proper notice the
defendant could have withdrawn from the risk. If
the employer refused to follow safety suggestions
made by defendant, it should have sought to with-
draw from the risk. No matter what suggestions

defendant may have made in the interests of safety, the fact remains that on the occasion in question it undertook a safety inspection and did not discover or ask that an obvious dangerous condition be corrected.

I vote to affirm.