WATSON v EMPLOYERS INSURANCE COMPANY OF WAUSAU

1. NEGLIGENCE—INSURANCE CARRIER—INSPECTIONS—SAFETY—STAN-
   DARDS—DUE CARE.

   A workmen's compensation insurance carrier prior to October 30,
   1972, did not share the employer's immunity from suit but had
   to conform to a standard of due care in inspecting the employ-
   er's premises or face liability for the consequences of his
   negligence (MCLA 413.15).

2. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE—QUESTIONS
   FOR JURY.

   The test in the review of a grant of a directed verdict is whether,
   giving the plaintiff's proofs their strongest probative force, the
   evidence was sufficient to create jury questions on the appropri-
   ate legal issues and to justify submission to the trier of fact.

3. NEGLIGENCE—WORKMEN'S COMPENSATION—THIRD-PARTY TORTFEA-
   SOR—SAFETY—EVIDENCE.

   The trial court correctly directed a verdict of no cause of action
   in favor of a defendant workmen's compensation insurance
   carrier charged with negligence as a third-party tortfeasor
   where the plaintiff failed to show that the defendant increased
   the risk of harm, undertook performance of the employer's
   obligation of providing its employees a safe place to work, or
   that the defendant's conduct induced reliance of either the
   employer or the employee on the insurer, and where the
   evidence did show that the employer rejected the insurer's
   suggestions, neither relinquishing any control to the insurer,
   nor relying on its recommendation.

4. EVIDENCE—EXPERT TESTIMONY—SAFETY—STANDARDS.

   The exclusion of the testimony of a Maryland expert, not knowl-
   edgeable in Michigan safety or consulting operations was not
   an abuse of the trial court's discretion; there is no established

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 58 Am Jur, Workmen's Compensation § 563 *et seq.*
[2] 5 Am Jur 2d, Appeal and Error § 849.
[4] 31 Am Jur 2d, Expert and Opinion Evidence §§ 2, 3.

national standard for sa*²*** ingineers or consultants analagous to that of medical specialists.

Appeal from Wayne, Patrick McCauley, J. Submitted Division 1 October 3, 1973, at Detroit. (Docket No. 15106.) Decided November 28, 1973.

Complaint by Hazel Watson, administratrix of the estate of Joe Watson, Jr., deceased, against Employers Insurance Company of Wausau, the workmen's compensation insurance carrier for the decedent's employer, as a third-party tortfeasor for damages resulting from the decedent's fatal injury. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Liberson, Fink, Feiler, Crystal & Burdick, P. C. (Robert Z. Feldstein,* of Counsel), for plaintiff.

*Harvey, Kruse & Westen, P. C.,* for defendant.

Before: Danhof, P. J., and Fitzgerald and Walsh,* JJ.

Walsh, J. Plaintiff's decedent, a press operator at Molloy Manufacturing, was fatally injured when a piece of fractured metal shot out from an unguarded press, piercing his chest. Plaintiff widow sued defendant workmen's compensation insurance carrier as a third-party tortfeasor. MCLA 418.827; MSA 17.237(827).[1] She alleged that

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCLA 418.827; MSA 17.237(827), after amendment by 1972 PA 285, effective 10-30-72, now provides:

"(8) The furnishing of, or failure to furnish, safety inspections or safety advisory services incident to providing workmen's compensation insurance, or pursuant to a contract providing for safety inspections or safety advisory services between the employer and a self-insurance service organization or a union shall not subject the insurer, self-insured service organization or the accident fund, or their agents or employees, or the union, its members or the members of its

defendant's negligent safety inspection proximately caused her husband's death.

Plaintiff claims the trial court erred in directing a verdict of no cause for action in favor of defendant at the close of plaintiff's case. Plaintiff's case consisted of defendant's safety consultant's uncontradicted testimony and certain excluded expert testimony, preserved on a separate record. Mr. Viening, the safety consultant, testified that he first visited Molloy Manufacturing on October 10, 1968. He observed a press where a workman had been killed in a September accident similar to the decedent's. On that occasion, he recommended that steel barrier guards be installed on all similar presses to prevent ejection of projectiles. Molloy's supervisory personnel rejected that proposal, opining that steel barrier guards might create safety hazards by obstructing vision. They indicated that their engineering department would look into development of a plastic barrier guard. Mr. Viening's suggestions were later reduced to writing and communicated via his home office to the employer. The written recommendations, received November 5, 1968, suggested strengthening quality-control procedures, intensifying training for new and transferred employees, and installing barrier guards. The letter further provided that Molloy had agreed to complete one of three safeguarding

safety committee, to third party liability for damages for injury, death or loss resulting therefrom."

The cause of action having accrued in 1968, this amendment is inapplicable to the present proceedings. The governing statute at the time the cause accrued, MCLA 413.15; MSA 17.189, provides, in part:

"Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than a natural person in the same employ or the employer to pay damages in respect thereof, * * * such injured employee or his dependents or their personal representative may also proceed to enforce the liability of such third party."

methods. Mr. Viening returned to the plant in November, 1968, for unrelated purposes. On December 10, 1968, prior to placement of barrier guards, decedent's fatal accident occurred.

Plaintiff relies on the rule that one who undertakes a gratuitous act must conform to a standard of due care or face liability for the consequences of negligence. *Hart v Ludwig,* 347 Mich 559, 564; 79 NW2d 895, 898 (1956). Specifically, an insurance carrier (prior to October 30, 1972) does not share the employer's immunity from suit, but must conform to a standard of due care in inspecting the employer's premises. *Ray v Transamerica Insurance Co,* 10 Mich App 55; 158 NW2d 786 (1968), *leave to appeal denied* 381 Mich 766 (1968); *Banner v Travelers Insurance Co,* 31 Mich App 608; 188 NW2d 51 (1971); *Megge v Lumbermens Mutual Casualty Co,* 45 Mich App 119; 206 NW2d 245 (1973); *Ray v Transamerica Insurance Co,* 46 Mich App 647; 208 NW2d 610 (1973); *Ruth v Bituminous Casualty Corp,* 427 F2d 290 (CA 6, 1970), refusing to apply *Kotarski v Aetna Casualty & Surety Co,* 244 F Supp 547 (ED Mich 1965), *aff'd* 372 F2d 95 (CA 6, 1967). In adopting this view, Michigan joins a loose majority of jurisdictions which find no statutory support for a grant of immunity to the insurer. We specifically decline to disaffirm this view, despite the criticism *Ray, supra,* engendered.[2]

---

[2] We read with interest Glendening's commentary, *"Torts"* 15 Wayne L Rev 493, 502 (1968). *Ray v Transamerica,* 10 Mich App 55; 158 NW2d 786 (1968), is faulted for begging the question, *i.e.,* framing the issue in terms of the employee's "common-law right to sue" assumes the existence of that right. We disagree. Larson, in his work, explains that third party actions help implement two distinct social policies. The values sought to be achieved are first: to make the injured worker whole, and, once accomplished, to place the ultimate loss on the wrongdoer. He notes further that so long as antiquated relief schemes are not updated by legislatures, pressures to find third party tortfeasors can only increase. 2 Larson, Workmen's Compensa-

While we recognize the insurer's nonimmune status, we nonetheless hold that the trial court properly directed the verdict for defendant. The standard for review of entry of directed verdicts requires us to construe the evidence in favor of the nonmovant. When this Court reviews the grant of a directed verdict, the test is whether, giving plaintiff's proofs their strongest probative force, the evidence was sufficient to justify submission to the trier of fact. *Parker v Associates Discount Corp,* 44 Mich App 302; 205 NW2d 300 (1973). Evidence adduced at trial must be sufficient to create jury questions on the appropriate legal issues. The governing law can be found at 2 Restatement of Torts 2d, § 324A, p 142, which provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if:

"(a) his failure to exercise reasonable care increases the risk of harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

Assuming an undertaking by defendant, no evidence showed that defendant increased the risk of harm, undertook performance of the employer's obligation of providing its employees a safe place

tion § 72.10 ff, p 174 ff. Given that context, we think slight departures from absolute fidelity to deductive principles of logic are quite forgivable sins.

to work,[3] or defendant's conduct induced reliance of the employer or employee on the insurer. Testimony shows, to the contrary, that the employer rejected the insurer's suggestions, neither relinquishing any control to the insurer, nor relying on defendant's recommendation.

The instant case is factually distinct from *Ray, supra, Megge, supra,* and *Ruth, supra, inter alia.* For example, in *Megge, supra,* jury questions clearly arose from conflicting evidence. In that case, one witness testified that thorough inspections occurred on a monthly basis, while another witness testified that cursory inspections occurred annually. The plant manager testified further that he relied on these inspections. In *Ruth, supra,* the insurer had, since 1960, on a total of 16 or 17 occasions, regularly inspected a plant lacking any safety program or safety engineering operation. Again, in *Ray, supra,* an insurance engineer had regularly visited the employer who followed some recommendations while rejecting others. The Court in *Ray* expressly held that reliance is a relevant consideration in determining the extent of the undertaking. Even if we conclude that the insurer's actions amounted to assistance in the employer's duty to provide a safe place to work, here, distinct from *Ray,* no evidence shows that the employer relied on that undertaking. The trial court correctly directed a verdict for defendant.

Next, plaintiff asserts that the trial court abused its discretion in excluding the testimony of an expert not knowledgeable in Michigan safety engineering or consulting operations.

The Maryland safety expert's testimony relates

---

[3] Especially as this prong of the rule is explained in *Ray v Transamerica Insurance Co,* 46 Mich App 647; 208 NW2d 610 (1973). See *infra.*

to legal conclusions about the duty of Michigan safety consultants. We refuse plaintiff's invitation to establish a national standard for safety engineers or consultants like that for medical specialists, set forth in *Naccarato v Grob,* 384 Mich 248; 180 NW2d 788 (1970). The state of the art cannot at this time be logically analogized to medical specialties.

Affirmed. Costs to defendants.

All concurred.