SABRAW v MICHIGAN MILLERS MUTUAL INSURANCE
COMPANY

BULLOCK v MICHIGAN MILLERS MUTUAL INSURANCE
COMPANY

CSUTORA v MICHIGAN MILLERS MUTUAL INSURANCE
COMPANY

HANSEN v MICHIGAN MILLERS MUTUAL INSURANCE
COMPANY

WAUGH v MICHIGAN MILLERS MUTUAL INSURANCE
COMPANY

Docket Nos. 77-495, 77-496, 77-497, 77-498, 77-499, 77-500. Submitted
June 21, 1978, at Lansing.—Decided December 8, 1978. Leave
to appeal applied for.

An explosion occurred at a feed mill owned by Farm Bureau
Services. Several employees were killed or injured in the explo-
sion. Complaints for damages were brought in Saginaw Circuit
Court by Alvia G. Sabraw, administratrix of the estate of
Lowell T. Sabraw, Helen J. Bullock, administratrix of the
estate of Clarence Bullock, Michael Csutora, for himself and as
administrator of the estate of Alex Csutora, James and Pauline
Hansen, and Donald H. Waugh against Michigan Millers Mu-
tual Insurance Company and others. The cases were consoli-
dated for trial. The jury returned verdicts in favor of each
plaintiff, but upon motion of Michigan Millers, Joseph R.
McDonald, J., entered judgment notwithstanding the verdict in
favor of Michigan Millers. The plaintiffs appeal. *Held:*

The evidence regarding the defendant's inspections of the

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4] 46 Am Jur 2d, Judgments § 117.

Practice and procedure with respect to motions for judgment not-
withstanding or in default of verdict under Federal Civil Proce-
dure Rule 50(b) or like state provisions. 69 ALR2d 449.

[2] 44 Am Jur 2d, Insurance §§ 1182, 1413.

Liability insurance: "accident or accidental" as including loss re-
sulting from ordinary negligence of insured or his agent. 7
ALR3d 1262.

feed mill and the knowledge of the parties was sufficient to justify the jury's verdict. The question of whether the defendant gratuitously undertook to inspect the mill for fire hazards is a question of fact upon which there was ample evidence presented. The trial court erred· in granting the judgment notwithstanding the verdict.

Reversed and remanded for reinstatement of the jury verdicts.

M. E. CLEMENTS, J., dissented. He would hold that the trial court was within its authority in determining the issue of the defendant's duty to the employees as a matter of law because there was insufficient evidence presented to create a jury question on the issue of whether the defendant had voluntarily assumed a duty toward the employees, and that the entry of judgment notwithstanding the verdict was proper.

### OPINION OF THE COURT

1. JUDGMENT—JUDGMENT NOTWITHSTANDING THE VERDICT—EVIDENCE —QUESTION OF FACT.

·The grant of a defendant's motion for a judgment notwithstanding the verdict is appropriate only if the evidence is insufficient as a matter of law to support a judgment for the plaintiff, giving the plaintiff the benefit of every reasonable inference that can be drawn from the evidence; if reasonable men could honestly disagree as to whether the plaintiff has satisfied his burden of proof on the necessary elements of his cause of action, a judgment notwithstanding the verdict is improper.

2. NEGLIGENCE—INSURERS—SAFETY INSPECTIONS.

An insurance carrier may be held liable for consequences proximately caused by its negligent safety inspections.

3. JUDGMENT—JUDGMENT NOTWITHSTANDING THE VERDICT—EVIDENCE —QUESTION OF FACT.

A judgment notwithstanding the verdict, in favor of a defendant fire insurer of a feed mill in which the plaintiffs were injured when a dust explosion occurred in the mill, was improper where there was a question of fact as to whether the insurer gratuitously undertook to inspect the mill for fire hazards, upon which point there was ample evidence, and where the jury reasonably could have concluded that the insurer's actions constituted want of reasonable care or that the insurer's failure to detect and warn of the dangers in the mill caused the plaintiffs' injuries.

Dissent by M. E. Clements, J.

4. Judgment—Judgment Notwithstanding the Verdict—Insurance—Duty—Evidence.

   A trial court properly determined the issue of duty as a matter of law by granting a defendant property insurer a judgment notwithstanding the verdict in an action for injuries and wrongful death to employees of the insured where the defendant insurer had made safety inspections of a feed mill directed at preventing fire, where there was insufficient evidence presented to create jury questions on the issue of whether the insurer had voluntarily assumed a duty toward the feed mill employees and where there was undisputed evidence that the insurer exercised no control in the feed mill with regard to employee safety.

*Cicinelli, Mossner, Majoros & Alexander, P.C.,* for plaintiffs Sabraw, Bullock, Csutora and Hanes.

*Martin & Martin,* for plaintiff Waugh.

*Otto & Otto,* and *Purcell, Tunison & Cline, P.C.,* for defendant.

Amici Curiae: *Joselyn, Rowe, Jamieson & Grinnan, P.C.,* for the Alliance of American Insurers, American Insurance Association and National Association of Independent Insurers.

Before: R. B. Burns, P.J., and D. F. Walsh and M. E. Clements,* JJ.

D. F. Walsh, J. Plaintiffs appeal by right from the trial court's entry of judgment notwithstanding the verdict in favor of defendant Michigan Millers Mutual Insurance Company.

The complaints arose out of an explosion at Farm Bureau Services' Zilwaukee Feed Mill on

---

* Circuit judge, sitting on the Court of Appeals by assignment.

September 15, 1969. Three of the plaintiffs were injured in the explosion; the other three plaintiffs represent the estates of persons killed in the explosion. All of the casualties were employees of Farm Bureau at the time of the accident.

Defendant Michigan Millers was the fire insurance carrier for the Zilwaukee mill.[1]

Plaintiffs' individual actions were consolidated for trial. Jury verdicts rendered in favor of each plaintiff were set aside by the trial court on the basis that the evidence was insufficient to raise a question of fact for jury determination. The propriety of the trial court's action is the only issue we shall address.[2]

A judgment notwithstanding the verdict on defendant's motion is appropriate only if the evidence is insufficient as a matter of law to support a judgment for the plaintiff. *Jackson v Fox,* 69 Mich App 283; 244 NW2d 448 (1976). In making that determination, the court must give the plaintiff the benefit of every reasonable inference that could be drawn from the evidence. *Kroll v Katz,* 374 Mich 364; 132 NW2d 27 (1965). If reasonable men could honestly disagree as to whether the plaintiff has satisfied his burden of proof on the necessary elements of his cause of action, a judgment notwithstanding the verdict is improper. *Kroll v Katz, supra; Jackson v Fox, supra.*

Plaintiffs' cause of action was premised on 2 Restatement Torts, 2d, § 324A, p 142:

[1] Fireman's Fund Insurance Company, the worker's compensation carrier for the mill, was originally named as a defendant but was granted a directed verdict which plaintiffs have not appealed. Mill and Elevator Mutual Insurance Company, Michigan Millers' reinsurer, was a third-party defendant. Insofar as neither of the above parties are involved in this appeal, we shall hereinafter refer to Michigan Millers as the defendant.

[2] Our disposition of this issue obviates the necessity of considering plaintiffs' claim that certain evidence was erroneously excluded.

"One who undertakes, gratuitously or for consideration to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, *if*

"(a) his failure to exercise reasonable care increases the risk of harm, *or*

"(b) he has undertaken to perform a duty owed by the other to the third person, *or*

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." (Emphasis supplied.)

That section has been held to apply to insurance carriers so as to render them liable for consequences proximately caused by their negligent inspections; *e.g., Olkowski v Aetna Casualty & Surety Co,* 53 Mich App 497; 220 NW2d 97 (1974), *aff'd* 393 Mich 758; 223 NW2d 296 (1974), *Megge v Lumbermens Mutual Casualty Co,* 45 Mich App 119; 206 NW2d 245 (1973), *Ray v Transamerica Ins Co,* 46 Mich App 647; 208 NW2d 610 (1973).[3] We

---

[3] Defendant seeks to distinguish these cases as imposing liability only upon worker's compensation carriers, and points to *Smith v Allendale Mutual Ins Co,* 79 Mich App 351; 261 NW2d 561 (1977), as support for the proposition that employees' injuries are not included within the orbit of risk created by inspection for fire hazards. Neither contention is correct.

Nothing in 2 Restatement Torts, 2d, § 324A, or in the line of cases beginning with *Ray v Transamerica Ins Co,* 46 Mich App 647; 208 NW2d 610 (1973), suggests any principled basis for excluding from liability a fire insurance carrier whose negligent inspection results in a fire which injures foreseeable plaintiffs. In such a case liability does not attach because the fire insurer is held responsible for employee safety *per se,* but rather because plaintiffs' injuries resulted from the *fire* insurance carrier's failure to use due care in inspecting for *fire* hazards.

*Smith, supra,* illustrates this point. In that case plaintiff was injured as the result of an electrical malfunction in an overhead crane. Defendant fire insurer was held not liable because the injury was not caused by a fire hazard.

"Allendale Mutual did provide fire insurance to Great Lakes Steel, and its agent, Factory Mutual, did inspect the plant for fire hazards; however, the inspections were limited in both scope and purpose.

shall review the evidence to determine whether it was sufficient to support the jury's verdicts.[4] In making that determination we accept as facts those conclusions reasonably inferable from the evidence.

All parties agreed that the most likely cause of the mill explosion was the ignition of dust particles[5] by the exhaust pipe of a four-wheeled industrial truck referred to as a "Bobcat".[6] The gist of the plaintiffs' case was that a reasonably careful inspection by the defendant's field representative would have detected that danger and prevented the explosion.

"Factory Mutual was concerned with the detection of fire hazards and employed individuals who were specially trained in this area. The employees of Factory Mutual had no training in the area of employee safety nor did they hold themselves out as making inspections for this purpose. *Factory Mutual did not inspect the electrical equipment or the cranes because they contained virtually no combustible material. Furthermore, it did not make any difference to Factory Mutual if the circuits around the cranes were grounded or ungrounded because neither posed a fire hazard."* Id. at 356. (Emhasis added.)

The instant defendant thus is correct in asserting that the scope of its inspection was limited, but it focuses on the wrong parameter. Liability is not circumscribed by *what* was injured (*i.e.,* property or persons) but by *how* it was injured (whether the damage was caused by a hazard within the scope and purpose of the inspection). If anything, the reasoning in *Smith* provides support for imposing liability in the instant case, since plaintiffs' injuries derived from a hazard patently within the scope and purpose of defendant's inspection.

[4] Plaintiffs will prevail on appeal if any one of their theories of liability is supported by the evidence. Consequently, we shall not attempt to assess the evidentiary support of additional theories once we determine one to have sufficient proof to create a jury question on each of its elements.

[5] The mill's production operation consisted of converting raw ingredients such as corn, oats, wheat and soybeans into food concentrate for cattle, chickens and pigs. Most of the raw ingredients received at the mill were finely ground powdery material which was highly explosive at 10–15% concentration in the air.

[6] More precisely, the theory generally accepted by the parties was that the explosion was caused when the Bobcat muffler ignited particles of ground corncob, some of which fell unnoticed and was buried in unignited material. That material was dumped into a hopper and carried upward into storage bins where it rose to the surface and ignited adjacent dust.

It was undisputed that the defendant's field representative had conducted numerous inspections[7] of the mill for the purpose of detecting fire hazards. He knew that a number of employees worked in the building and that they would be harmed by fire or explosion. He was aware of the explosive potential of the dust[8] and was overtly concerned with detecting and eliminating possible sources of ignition.[9]

The Bobcat constituted an ignition hazard[10] and should not have been used indoors. Although it was used almost exclusively indoors, defendant's field representative stated that he had never seen it inside in the course of any of his inspections. Consequently, he never adverted to it as a fire hazard in his reports to his superiors or in his discussions with Farm Bureau's management.[11]

[7] Defendant's field representative conducted between 22 and 30 inspections of the mill between 1963 and 1969, including 6 inspections in the 9 months preceding the explosion. The average duration of the inspections was between one and two hours.

[8] Defendant's field representative estimated its explosive potential as seven times that of dynamite.

[9] He testified that he had been concerned about possible ignition from a cigarette, a match or even a spark from a nail on a workman's shoe. At his suggestion, "No Smoking" signs had been posted at various locations in the mill.

[10] Plaintiffs' expert witness testified that the use of the Bobcat inside the mill was entirely improper because of its propensity for initiating fires or explosions; only explosion-proof electrical trucks with sealed equipment should have been used.

[11] Defendant's field representative testified that in February of 1969 he forcefully informed the Farm Bureau management that the amount of dust in the mill at that time constituted an alarming risk of immediate explosion. At that point he renewed with increased urgency his suggestion that Farm Bureau install a dust control system. For his efforts he received a reprimand from his superiors for not "going through channels". Farm Bureau received a written apology from the defendant. No dust control system was installed because of the economic ramifications of closing the plant for 30 days to permit installation.

Although the field representative's recognition of the danger of the dust is analytically distinct from his negligence in not detecting the danger posed by the Bobcat, Farm Bureau's dilatory conduct in

Although Farm Bureau had its own safety program, it had no fulltime safety director. Consequently, insurance carriers were relied upon to some degree to point out safety problems. The mill's representative to the safety committee for the Zilwaukee complex was under the impression that defendant's field representative was inspecting for the employees' safety and he relied on those inspections. Two Farm Bureau executives testified that they had not received any urgent warning of imminent danger of explosion or fire at the mill.

We find the foregoing evidence sufficient to justify the jury's verdicts. Whether the defendant gratuitously undertook to inspect the mill for fire hazards is a question of fact, *Andrews v Insurance Company of North America,* 60 Mich App 190; 230 NW2d 371 (1975), *remanded for reconsideration,* 394 Mich 464; 231 NW2d 645 (1975), *Megge, supra,* and the evidence was ample on that point. Furthermore, defendant's field representative admitted that he realized the danger that fire and explosion posed for the mill's employees.

From the number and extent of the inspections, the frequency with which the Bobcat was used indoors, and its apparent danger as an ignition hazard, the jury could have reasonably concluded that the inspector's failure to notice the Bobcat or to realize its dangerousness constituted want of reasonable care. See *Moning v Alfono,* 400 Mich

tolerating the danger posed by the dust for purely economic motives was irresponsible to say the least. Its attitude was reminiscent of the "public be damned" philosophy that dominated a bygone era, and the current framework of the worker's compensation law in this state insulates it from the economic ramifications of its recklessness. It may be that the Legislature should consider enacting penalty provisions such as exist in 14 other states which impose increased liability for such egregious conduct. See 2A Larson, Workmen's Compensation Law, § 69.10.

425; 254 NW2d 759 (1977). Similarly, the jury reasonably could have found that the failure to detect and warn of the danger posed by the Bobcat caused the plaintiffs' injuries by "cloak[ing] the defect, [or] dull[ing] the call to vigilance", *Ray, supra,* 658, because of the reliance of either Farm Bureau *or* the plaintiffs on the defendant's inspections to disclose such a serious hazard.[12]

Although we are bound by a clear line of precedent, we view the result in the instant case with some reservation because of its possible impact upon the inspection practices of fire insurers.[13] The Legislature might be well-advised to consider action comparable to that taken with respect to worker's compensation carriers. MCL 418.131; MSA 17.237 (131), MCL 418.827(8); MSA 17.237 (827)(8). Until it does so, however, fire insurance carriers remain subject to common law liability for damages resulting from negligent inspections under those circumstances enumerated in 2 Restatement Torts, 2d, *supra.*

Reversed and remanded for reinstatement of the jury verdicts. Costs to appellants.

R. B. Burns, P.J., concurred.

M. E. Clements, J. *(dissenting).* Plaintiffs appeal from entry of judgment notwithstanding the verdict in favor of the defendant.

A review of the record indicates to this writer that the trial judge did not err in granting JNOV.

---

[12] We are not suggesting that the theory of liability described in the text is the only one supportable by the evidence. *See* fn 3, *supra.* Nor are we unaware of the amount and probative force of the defendant's evidence. We have consciously restricted ourselves to the minimum factual exposition necessary to decide the issue before us—a more encompassing summary of the voluminous record before us is both impractical and legally unnecessary.

[13] *But see Ray v Transamerica Ins Co,* 46 Mich App 647; 208 NW2d 610 (1973).

The relationship between Michigan Millers and plaintiffs' employer Farm Bureau Services was clear. Michigan Millers provided property insurance and its safety inspections were directed at preventing fire and collaterally, as a result, the protection of workers upon the premises. The trial judge was within his authority in determining the issue of duty as a matter of law. *Ray v Transamerica Ins Co,* 46 Mich App 647; 208 NW2d 610 (1973).

The testimony of the defendant's inspector was unequivocal. His inspections were designed solely to protect against Michigan Millers having to pay under the fire insurance policy it issued to Farm Bureau Services. The inspector had elsewhere conducted employee safety inspections, which were more extensive than those conducted in the Zilwaukee feed mill. The inspector's testimony that he never saw the Bobcat which provided the ignition source for the explosion inside the mill was not contradicted.

Additionally, the testimony of Farm Bureau Services officials convinces me that Farm Bureau Services did not rely on Michigan Millers concerning employee safety. William Callum, for example, testified that Farm Bureau Services never accepted the inspector's findings without doing its own independent investigation. There was a safety committee to which the Zilwaukee feed mill sent a representative.

As in *Smith v Allendale Mutual Ins Co,* 79 Mich App 351; 261 NW2d 561 (1977), I would affirm entry of JNOV for defendant fire insurance company. There was insufficient evidence presented at trial to create jury questions on the issue of whether defendant had voluntarily assumed a duty towards the feed mill employees. Evidence was undisputed that defendant exercised no con-

trol in the feed mill with regard to employee safety. *Andrews v Insurance Company of North America,* 60 Mich App 190; 230 NW2d 371 (1975), *remanded,* 394 Mich 464; 231 NW2d 645 (1975), *Watson v Employers Ins Co of Wausau,* 50 Mich App 597; 213 NW2d 765 (1973).

The plaintiffs presented no evidence that defendant had undertaken any obligation towards the feed mill employees. The threshhold element of a cause of action premised on 2 Restatement of Torts, 2d, § 324A was therefore not proven.

I respectfully dissent and vote to affirm.