CUNNINGHAM v CONTINENTAL CASUALTY COMPANY (ON REMAND)

KEMPAINEN v CONTINENTAL CASUALTY COMPANY (ON REMAND)

Docket Nos. 71455, 71456. Submitted May 19, 1983, at Lansing.— Decided November 20, 1984.

Cleveland Cunningham and Keith Kempainen, employees of Greenfield Construction Company, were injured when the dirt walls of a tunnel shaft in which they were working collapsed. Both Cunningham and Kempainen filed suit against Continental Casualty Company, Greenfield's workers' compensation insurance carrier, in Wayne Circuit Court contending that their injuries were the result of Continental's failure to adequately perform the safety inspection duties at the construction site it had undertaken as Greenfield's workers' compensation insurance carrier. The cases were consolidated for trial. The jury awarded plaintiffs $725,000 each, and judgments were entered, Peter B. Spivak, J. Continental appealed and the Court of Appeals granted plaintiffs' motions to affirm on August 21, 1980. Continental sought leave to appeal to the Supreme Court, which, in lieu of granting leave to appeal, remanded the cases to the Court of Appeals for reconsideration in light of a 1981 decision of the Supreme Court, 417 Mich 984 (1983). On remand, *held:*

1. The Supreme Court's holding in the 1981 case, that where a plaintiff seeks to prove an undertaking by conduct which benefits another and that conduct is consistent with a primary purpose on the part of the actor to benefit himself, the plaintiff must offer additional evidence to create a jury question whether there was an undertaking to render services and hence a duty to one who might foreseeably be injured by the actor's failure to perform the undertaking with reasonable care, is applicable to this case.

2. The evidence introduced by plaintiffs is insufficient to

REFERENCES FOR POINTS IN HEADNOTE
57 Am Jur 2d, Negligence §§ 36, 37, 45, 58.
Forseeability as an element of negligence and proximate cause. 100 ALR2d 942.

establish the necessary threshold of an undertaking by defendant to provide services to another.

Reversed and remanded.

NEGLIGENCE — DUTY — THIRD PARTIES — EVIDENCE.

A plaintiff who seeks to prove an undertaking by conduct which benefits another where that conduct is consistent with a primary purpose on the part of the actor to benefit himself must offer additional evidence to create a jury question whether there was an undertaking to render services and hence a duty to one who might foreseeably be injured by the actor's failure to perform the undertaking with reasonable care.

*The Jaques Admiralty Law Firm, P.C.* (by *Leonard C. Jaques*), for plaintiffs.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P.C.* (by *Richard J. Tonkin*), for defendant.

ON REMAND

Before: T. M. BURNS, P.J., and BRONSON and R. M. MAHER, JJ.

PER CURIAM. On February 10, 1970, plaintiffs, employees of Greenfield Construction Company, were injured when the dirt walls of a tunnel shaft in which they were working collapsed. At the time of the accident, defendant provided workers' compensation insurance to Greenfield Construction. Plaintiffs sued defendant, arguing that their injuries were caused by defendant's failure to adequately perform the safety inspection duties at the construction site it had undertaken as Greenfield Construction's workers' compensation carrier. The jury awarded plaintiffs $725,000 each, and defendant appealed to this Court. After various proceedings, this Court granted plaintiffs' motions to affirm on August 21, 1980. Defendant sought leave to appeal to the Supreme Court. The Supreme Court, in lieu of granting leave to appeal, re-

manded the case to the Court of Appeals "for reconsideration in light of *Smith v Allendale Mutual Ins Co,* 410 Mich 685; 303 NW2d 702 (1981)". 417 Mich 984 (1983).

On remand, defendant argues that the earlier judgments must be reversed because plaintiffs failed to establish at trial that defendant was liable to them under the negligent inspection theory set forth in *Smith v Allendale, supra,* or because the jury was not properly instructed under the *Smith v Allendale* theory. In *Smith v Allendale,* the plaintiffs sought to hold the defendants (fire insurers for plaintiffs' employers) liable for injuries sustained by the plaintiffs as a result of fire hazards not detected and brought to the insureds' attention after the insurers' inspections of the insureds' premises. The plaintiffs argued that the insurers had become liable to them under the theory expressed in Restatement Torts, 2d, § 324A, which provides that, in certain circumstances, one who undertakes to render services to another which he should recognize as necessary for the protection of a third person is subject to liability if his "failure to exercise reasonable care to [perform][1] his undertaking" results in physical harm to the third person. The Supreme Court held that in order to establish such a threshold undertaking, the plaintiffs were required to prove that the insurers "had agreed or intended to provide services for the benefit of [their] insured[s]". The Supreme Court further held that "[e]vidence demonstrating merely that a benefit was conferred upon another is not sufficient to establish an undertaking which betokens duty. * * * Acordingly,

---

[1] The published text of § 324A uses "protect" instead of "perform"; this is apparently a typographical error. See *Smith v Allendale, supra,* 410 Mich 705, fn 4.

where a plaintiff seeks to prove an undertaking by conduct which benefits another and that conduct is consistent with a primary purpose on the part of the actor to benefit himself, the plaintiff must offer additional evidence to create a jury question whether there was an undertaking to render services and hence a duty to one who might foreseeably be injured by the actor's failure to perform the undertaking with reasonable care." 410 Mich 717-718.

In response, plaintiffs first argue that the holding in *Smith v Allendale* is confined to situations involving fire insurance inspections.[2] They contend that the issue addressed in *Smith* concerned the evidentiary requirements necessary to establish that fire insurance inspections constituted "services to another" that would trigger the duty to exercise reasonable care in the services provided and that, for various policy reasons, these evidentiary requirements are not equally applicable to a negligent worker's compensation insurance inspection case.

We do not agree that the holding of *Smith v Allendale* is applicable only to fire insurers. Although the Supreme Court's opinion repeatedly refers to fire insurers, fire inspections, and fire prevention, the holding of the case, as stated earlier, is expressed in general terms, referring to insurers and, even more generally, to "plaintiffs" and "actors" rather than to "fire insurers". The underlying issue in the case is not what quantum of evidence is needed to establish a fire insurer's duty to the employees of its insured, but rather how to properly interpret the term "undertaking"

---

[2] Plaintiffs also argue that defendant failed to preserve the issue of the sufficiency of the evidence under § 324A Restatement, Torts, 2d for appeal. We need not address this issue as the Supreme Court has ordered us to reconsider our previous decision "in light of *Smith v Allendale*".

in § 324A, Restatement Torts, 2d. On this issue, the Supreme Court stated:

"Section 324A provides that an actor who *'undertakes,* gratuitously or for consideration, *to render services to another'* (emphasis supplied) may in certain circumstances be liable to foreseeable third persons for negligence. Plaintiffs maintain that by inspecting the Farm Bureau feed mill and the Great Lakes Steel plant for fire hazards, the insurers in these cases embarked upon gratuitous undertakings within the ambit of § 324A.

"In our view, plaintiffs misconceive the sweep of the section's principles. The illustrations given in the official comments to § 324A and the cases cited by way of example in the Reporter's Notes involve either a contractual undertaking by a defendant to render particular services, an undertaking by an agent or employee to render services to his employer as part of the agency or employment, or an undertaking whose unambiguous object is to benefit another and which would not have been performed primarily for the actor's purposes.

"One can agree with the general proposition that any person, including an insurer, who assumes to act must act with reasonable care without concluding that the insurers in these cases are subject to liability under the rule of § 324A. It is not enough that the insurer acted. It must have undertaken to render services to another. Its acts do not constitute such an undertaking unless it agreed or intended to benefit the insured or its employees by the inspections.

\* \* \*

"The law does not impose a duty upon an insurer who inspects in the absence of conduct evidencing an agreement or intent to benefit others by the inspection; only in such a case has the insurer acknowledged the propriety of judging the competence of its inspection by a standard which measures its potential effect on others. This concept of acknowledged obligation to another is comprehended by § 324A's threshold description of '[o]ne who undertakes \* \* \* to render services to another'; the rule stated in § 324A by its terms does not

apply to an actor following a self-serving course of conduct." (Footnotes omitted.) 410 Mich 715-717.

The Supreme Court also stated:

"For the reasons stated [elsewhere in the opinion], we conclude that the insurers in these cases are not liable to plaintiffs under the common-law rule restated in § 324A because on these records the relationships did not give rise to an undertaking creating a duty to inspect with due care. This result is consistent with the Restatement when § 324A is read in light of the cases that gave rise to it. It also reflects our judgment, guided by the legislative response to a prior case, of the wiser public policy." 410 Mich 713.

We note that this Court, in *Scott v Detroit (On Rehearing)*, 113 Mich App 241; 318 NW2d 32 (1982), *lv den* 417 Mich 864 (1983), and the United States District Court, in *Rick v RLC Corp*, 535 F Supp 39 (ED Mich, 1981), have applied this holding in *Smith v Allendale* to nonfire insurer situations.

We also reject the contention that the Supreme Court expressly differentiated between fire insurers and workers' compensation insurers for purposes of § 324A in *Smith v Allendale*. The references to earlier Court of Appeals cases involving § 324A in the workers' compensation insurance context[3] do not approve the interpretation of § 324A contained within those cases, but simply note that § 324A of the Restatement Torts, 2d, had been applied prior to *Smith v Allendale* in Michigan case law. See 410 Mich 712. Other references to the workers' compensation insurance context occur only in the discussion of the common-law

---

[3] *Ray v Transamerica Ins Co*, 46 Mich App 647; 208 NW2d 610 (1973); *Watson v Employers Ins Co of Wausau*, 50 Mich App 597; 213 NW2d 765 (1973); *Olkowski v Aetna Casualty & Surety Co*, 53 Mich App 497; 220 NW2d 97 (1974), *aff'd* 393 Mich 758; 223 NW2d 296 (1974).

development of the concept of insurer liability for negligent inspection. This discussion does not endorse the holdings of the earlier cases. See 410 Mich 733-734.

Plaintiffs also argue that the policy reasons listed in *Smith v Allendale* for declining to "enlarge" the tort liability of fire insurers, 410 Mich 736-738, do not apply to workers' compensation insurers and that, therefore, the holding in *Smith* should not apply. However, whether or not these policy reasons apply, we are persuaded that the Supreme Court intended them to apply:

"The common-law principles relied on by the plaintiffs do not subject an insurer to liability for negligent inspection unless it undertakes to inspect for the insured's benefit. In assessing the proper development of these principles, we find compelling that, after the Court of Appeals permitted maintenance of actions against workers' compensation insurers for employee injuries proximately resulting from negligent safety inspections, the Legislature amended the workers' compensation act to preclude third-party actions against the carrier based upon its furnishing of, or failure to furnish, safety inspections. This amendment expresses a policy judgment that the societal benefits obtained from not burdening the insurer's decision to inspect its risks with the disincentive of tort liability outweigh whatever advantage might be realized from insistence that such inspections be conducted with due care. Although this amendment was by its terms confined to workers' compensation carriers, we are guided by the policy judgment implicit in the legislative decision." 410 Mich 736-737. (Footnotes omitted.)

Plaintiffs next argue that the principles in *Smith v Allendale* should not be applied retroactively to this case because the Supreme Court's decision relied upon a 1972 amendment to the workers' compensation act (which was enacted

*after* the accident in this case) and because the decision in *Smith* constitutes a "change in the common law". We reject both contentions. *Smith* relied upon the policy judgment that was revealed by the Legislature's swift amendment of the workers' compensation act to prevent insurers from being found liable for negligent inspections; *Smith* did not rely upon the amendment itself. It is therefore irrelevant that the 1972 amendment, 1972 PA 285, has been found by this Court to apply prospectively only.[4] In addition, by its own terms, the *Smith* decision does not constitute a "change in the common law". The Supreme Court declined to "enlarge" the tort liability of fire insurers and carefully based its interpretation of § 324A on an examination of the cases from which the Restatement rule was derived. Such an historical approach cannot be considered to result in an abrupt change in the law.

Having determined that the Supreme Court's holding in *Smith* is applicable to this case, we must determine whether or not the verdict against defendant must be reversed for lack of sufficient evidence demonstrating that defendant "had agreed or intended to provide services for the benefit of" Greenfield Construction Co., and its employees. *Smith v Allendale*, 410 Mich 713-715. After carefully reviewing the record, we conclude that plaintiffs did not present sufficient evidence of such an agreement or intention.

Plaintiffs presented the deposition testimony of Mr. Brian P. Murphy, a former safety engineer for CNA (defendant); the in-court testimony of Mr. Robert Myles, who, at the time of trial, headed

---

[4] *Andrews v Ins Co of North America,* 60 Mich App 190, 196; 230 NW2d 371 (1975); *Ray v Transamerica Ins Co, supra; Watson v Employers Ins Co of Wausau, supra; Olkowski v Aetna Casualty & Surety Co, supra.*

CNA's Loss Control division; defendant's answers to interrogatories; and the testimony of both plaintiffs. This testimony established that defendant, in its role as workers' compensation insurance carrier for Greenfield Construction, conducted safety inspections of Greenfield construction sites on an approximately monthly basis. These inspections were often unescorted and involved the inspector (often Brian P. Murphy) observing work in progress. If the inspector observed work being done in an unsafe manner, he would immediately give advice to the specific employee involved, to someone else on the work site, or to management personnel. However, both Murphy and Myles testified that the inspector and insurance company were without any authority to effect the changes recommended by them. Defendant's only alternative if Greenfield declined to follow the inspector's recommendations was to "get off the risk" (cancel the policy or refuse to renew it).

The inspectors conducted the inspections for two purposes. Initial inspections were conducted for "safety purposes" and to garner background information, such as the number of workers employed by a potential insured, needed for underwriting purposes. Subsequent inspections involved only the first purpose, unless an "additional risk" was discovered. The findings of both types of inspections were compiled in reports that were sent to defendant's underwriters so that they could evaluate the value of Greenfield as an insured and the risk of keeping Greenfield as a client. Copies of the reports were also sent to Greenfield management. Robert Myles testified that the responsibility of defendant's Loss Control department was to inform the management of the safety problems and to advise them as to how to correct their safety procedures. Defendant also provided assistance

and expertise in this area by training Greenfield personnel and joining Greenfield's safety meetings. Where an employer had an efficient safety program of its own, defendant visited the job site less frequently and extended fewer of these "educational" and "advisory" services. Defendant had offered the services of another inspector, Glenn Johnson, to Greenfield at its job sites. Both Myles and Murphy stressed that ultimately the decision to comply or not with defendant's recommendations rested solely with Greenfield's management.

On appeal, plaintiffs rely upon certain portions of this testimony, arguing that these portions state, when viewed in the light most favorable to plaintiffs, that the primary purpose for the inspections (excluding an initial inspection) was to assist Greenfield. However, it is apparent from the context of these particular quotations that the witnesses were testifying about their responsibilities to their own company. Thus, part of defendant's means of controlling its losses was to recommend various safety precautions to its insureds and to then assist the insureds in implementing these precautions.

This evidence falls short of the necessary proof of an agreement or intent to provide inspection services for Greenfield's (and its employees') benefit. The testimony establishes only that defendant inspected the job site to carry out its primary pupose of obtaining necessary information for its underwriters and to protect itself from losses once it had accepted Greenfield as a client. There is no indication in the evidence that defendant had ever promised to provide complete safety inspections to alert Greenfield to hazards on its premises or that defendant's advertising or communications with its policyholders represented that its inspection services would relieve Greenfield of the burden of

monitoring its facilities. 410 Mich 718-719. Instead, the evidence establishes only the fact of inspections and subsequent loss prevention and is therefore insufficient to establish the necessary threshold of an "undertaking to provide services to another".

Because we have reached this conclusion, we will not address defendant's second claim of error.

Under the unique procedural circumstances of this case, we partially reverse the judgments against defendant and remand to the trial court for a new trial limited solely to the issue of defendant's liability for plaintiffs' injuries under the theory that defendant had agreed or intended to provide services for the benefit of Greenfield Construction Co. and its employees. If plaintiffs are unable to prove such an undertaking, the entire judgments are reversed. However, if plaintiffs are able to prove the undertaking, the jury's prior determination of the amount of damages due to plaintiffs is affirmed.