BESCOE v LABORERS' UNION LOCAL NO 334

Docket No. 78-3359. Submitted November 13, 1979, at Detroit.—Decided July 1, 1980. Leave to appeal applied for.

Serstel Corporation undertook to rebuild certain blast furnaces owned by Great Lakes Steel Company. Pursuant to an agreement between Laborers' Union Local No. 334 and an association of Detroit area general contractors, Local No. 334 referred Howard Morgan to Serstel for the position of foreman. While this agreement provided that Serstel would hire from those referred by the union, Serstel was not bound to hire any particular referral and retained the power to fire any person that it hired. Morgan was hired and thereafter encountered difficulties with the job superintendent, which included threats of violence by Morgan against the superintendent. Union representatives were called on several occasions to speak with the job superintendent about the Morgan situation. After one of these disputes with the superintendent, Morgan returned to the job and attacked and severely injured a worker on the job, Edwin Bescoe. Bescoe, and his wife Lorraine, commenced an action for damages against Local No. 334 and Morgan and others. Following a jury trial in Wayne Circuit Court, John R. Urso, J., a verdict of $125,000 was returned in favor of Edwin Bescoe and a verdict of $25,000 was returned in favor of Lorraine Ann Bescoe, both verdicts running against Local No. 334 and Morgan. Defendant union appeals arguing that the trial court lacked subject matter jurisdiction in that plaintiffs' claim was based upon alleged acts which involved matters which have been preempted by Federal labor law. *Held:*

1. The doctrine of Federal preemption of jurisdiction over matters within the scope of the National Labor Relations Act seeks to insure the existence of a uniform national labor policy. The doctrine of preemption is based upon constitutionally

REFERENCES FOR POINTS IN HEADNOTES

[1-7] 48 Am Jur 2d (Rev), Labor and Labor Relations § 546.

48A Am Jur 2d, Labor and Labor Relations §§ 1727 *et seq.,* 2073.

[6, 8] 48 Am Jur 2d (Rev), Labor and Labor Relations § 464.

[7] 48 Am Jur 2d (Rev), Labor and Labor Relations §§ 398, 402.

mandated Federal supremacy where state regulation conflicts with a Federally protected right.

2. Federal preemption forbids all form of state control of the practices protected and prohibited by National Labor Relations Act except to the extent that the act itself permits state control or to the extent that the courts have discerned no congressional intent to preempt local jurisdiction. Primary among those instances in which preemption has been found not to apply to state regulation of labor practices are: (1) activities which are merely of peripheral concern to Federal labor regulation, and (2) activities which touch interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, deprivation of the power of a state to act will not be inferred. The application of these exceptions apply most directly to conduct which is arguably prohibited by Federal law, rather than to conduct which is arguably protected by Federal law.

3. Since plaintiffs' first claim was based upon defendant union's peaceful efforts to intercede on Morgan's behalf in his disputes with the superintendent representing the employer and since, pursuant to Federal law, the union's activities on behalf of Morgan were not only protected but, in fact, probably mandated, the circuit court lacked subject matter jurisdiction, the matter of the claim having been preempted by the Federal law.

4. Plaintiffs' claim based upon the alleged unfair representation of the union fails for lack of subject matter jurisdiction by the trial court, since plaintiff failed to plead or prove that the conduct of the union did not enjoy Federal protection or constituted willful misconduct by the union. Plaintiff thus failed to establish a basis upon which the operation of the preemption doctrine might have been avoided.

5. The agreement between the union and the employers' association whereby the union would refer applicants for positions did not create any duty or obligation to insure a safe workplace such that the union would become liable for the tortious acts committed by Morgan.

Reversed and remanded with instructions.

1. LABOR RELATIONS — FEDERAL PREEMPTION — NATIONAL LABOR RELATIONS ACT — PUBLIC POLICY — FEDERAL SUPREMACY.

The doctrine of Federal preemption of jurisdiction over matters within the scope of the National Labor Relations Act seeks to insure the existence of a uniform national labor policy; to the extent that a state seeks to regulate labor activities protected

by Federal law, preemption is based upon constitutionally mandated Federal supremacy.

2. LABOR RELATIONS — NATIONAL LABOR RELATIONS ACT — STATE CONTROL — FEDERAL PREEMPTION — EXCEPTIONS.

All form of state control of activities arguably within the protected practices and unfair labor practices sections of the National Labor Relations Act is forbidden except to the extent that the act itself provides for a state action or to the extent that the courts have been unable to discern a congressional intent to preempt local jurisdiction.

3. LABOR RELATIONS — FEDERAL PREEMPTION — EXCEPTIONS.

Judicially created exceptions to preemption of local jurisdiction of matters arguably within the scope of the Federal regulation of labor-management relations fall mainly into two areas: (1) activities which are merely of peripheral concern to Federal labor regulation and (2) activities which touch interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, deprivation of the power of the states to act will not be inferred.

4. LABOR RELATIONS — FEDERAL PREEMPTION — EXCEPTIONS — APPLICATION OF EXCEPTIONS.

The exceptions to the preemption doctrine, as it relates to labor relations matters, apply most directly to conduct which is arguably prohibited by Federal law, rather than to conduct which is arguably protected by Federal law.

5. LABOR RELATIONS — FEDERAL PREEMPTION — NATIONAL LABOR POLICY.

State court jurisdiction of matters concerning the regulation of labor relations is preempted where there is a substantial need to insure that conduct protected by Federal law is not prohibited through misinterpretation of Federal law with a consequential frustration of the congressionally mandated national labor policy.

6. LABOR RELATIONS — COURTS — JURISDICTION — TORTS — UNION LIABILITY FOR EFFORTS TO PROTECT A MEMBER — FEDERAL PREEMPTION.

Michigan trial courts lack subject matter jurisdiction over a claim for damages brought against a labor union where such claim is based upon the assertion that a union's alleged tort liability arose out of its peaceful efforts to intercede on behalf of a person who ultimately assaulted and injured a fellow employee making a claim for damages; such union activities

are clearly protected by the National Labor Relations Act and the exercising of jurisdiction by local courts is preempted by the need to insure a uniform national labor policy.

7. LABOR RELATIONS — COURTS — JURISDICTION — TORTS — LABOR
   UNIONS — FAIR REPRESENTATION — PLEADINGS.

   Michigan trial courts lack subject matter jurisdiction of a tort claim for damages against a union, such claim being based upon a claim of unfair union representation, where the plaintiff has failed to plead and prove that the conduct of the union did not enjoy Federal protection or constituted willful misconduct by the union.

8. LABOR RELATIONS — LABOR UNIONS — TORTS — EMPLOYMENT
   REFERRALS — SAFE WORKPLACE.

   An agreement between a union and an employer whereby the employer will hire as a foreman an individual referred by the union does not establish liability in the union for tortious job-related acts undertaken by the person so recommended by the union in the absence of the power of the union to fire the individual; such referral action by the union did not create in the union the duty to insure a safe workplace.

*James F. Finn* and *Mark S. Michael,* for plaintiffs.

*Miller, Cohen, Martens & Sugarman, P.C.* (by *William L. Martens, Duane F. Ice* and *Lea B. Vaughn*), for Laborers' Union Local No. 334.

Before: BRONSON, P.J., and D. C. RILEY and E. A. QUINNELL,* JJ.

BRONSON, P.J. Defendant Laborers' Union Local 334 appeals of right the judgment of the trial court, entered pursuant to a jury verdict, in favor of plaintiffs and against both defendant union and defendant Howard Morgan, jointly and severally.[1]

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Suit was originally brought against Morgan, Serstel, Great Lakes, the International Laborers' Union, and Local 334. Serstel was granted accelerated judgment, the International Union was dismissed by stipulation, and Great Lakes was granted a directed verdict at the

Damages were awarded to plaintiff Edwin Bescoe in the amount of $125,000 and to plaintiff Lorraine Ann Bescoe in the amount of $25,000.

I

In the summer of 1972 Serstel Corporation undertook to rebuild blast furnaces which were owned by Great Lakes Steel Company and located at Great Lakes' Zug Island facility. Serstel informed the various trade unions in the area of the number of workers needed, and workers were referred to and hired by Serstel. Among these were Howard Morgan, who was referred by defendant Laborers' Local 334, and Edwin Bescoe, who was referred by the Operating Engineers Local 324.

Morgan was referred as foreman of the crew of laborers, and was hired by Serstel in that capacity.[2] As foreman, it was his job to arrange for the supply of bricks and other materials to his work area. This part of his job brought him into contact with Bescoe, who operated a fork lift truck and who would, on occasion, be responsible for transporting the materials Morgan requested.

Testimony indicated that Serstel's superintendent, Charles Larimer, encountered difficulty with Morgan. Larimer testified that Morgan would not do as he was told, that he often came to work with alcohol on his breath (although Larimer was un-

close of plaintiffs' case. Judgment was taken against Morgan and Local 334, and the local alone has appealed.

[2] Article VIII of the collective bargaining agreement between Local 334 and the Detroit Chapter of the Associated General Contractors of America (to which Serstel was bound) gave Serstel the right to select the foreman from those workers referred by the union, and the foreman became the representative of the company. Morgan was not an employee or agent of the union. Although the union referred Morgan for the foreman's position, the company was not bound to accept him as such.

able to determine whether this adversely affected Morgan's work), and that he was verbally abusive. Disagreements between Morgan and Larimer escalated to the point where Morgan made threats of violence against Larimer. Larimer's response to his dissatisfaction with Morgan usually took the form of calls to the union. The union would then send a representative who would speak with both Larimer and Morgan, and tensions would ease for a while. Larimer testified that he "tried" to fire Morgan on several occasions, but that he would be told by the union that Morgan could not be fired.[3] Larimer never called the Great Lakes plant protection forces regarding Morgan.

In the early morning hours of September 9, 1972, Morgan reported for work on the midnight shift. He quickly became embroiled in a dispute with Larimer, who smelled alcohol on Morgan's breath. Within the hour, Morgan attacked and severely injured Bescoe. The record is not entirely clear as to the reason why Morgan attacked Bescoe, although there was testimony to indicate that Morgan was upset with the fact that Bescoe hauled away refuse containers before delivering bricks. In any event, as Bescoe drove his fork lift truck into Morgan's area, Morgan stopped Bescoe, turned off the truck's ignition and proceeded to chase Bescoe around the truck. Bescoe attempted to flee, but Morgan caught up with him and cut him on the neck with a knife. Morgan then departed the island, while Bescoe was taken to the hospital where he was treated and released. Medical testimony indicated that Bescoe is physically and psychologically unable to work.

---

[3] Serstel did have the authority to fire any worker, including Morgan.

## II

The principal issue in this case is whether the trial court lacked jurisdiction to entertain the action against the union on the basis that the National Labor Relations Act, as amended, preempts state court jurisdiction.

The preemption doctrine in the context of labor relations law seeks primarily to insure the existence of a uniform national labor policy.[4] Additionally, and particularly in cases where the state is seeking to regulate activity *protected* under Federal law, preemption is based on constitutionally mandated Federal supremacy. US Const, art VI, § 2, *Sears, Roebuck & Co v San Diego County Dist Council of Carpenters*, 436 US 180, 199-200; 98 S Ct 1745; 56 L Ed 2d 209 (1978). The United States Supreme Court has recognized that Congress, in enacting comprehensive legislation governing labor relations in enterprises affecting commerce and in creating a centralized administrative body charged with administering that legislation, intended to exclude the states from enforcing conflicting laws and procedures and intended to oust both state and Federal courts from the administration of Federal labor laws. *San Diego Building Trades Council v Garmon*, 359 US 236; 79 S Ct 773; 3 L Ed 2d 775 (1959).

After experience had shown that previous efforts to delineate the scope of the preemption doctrine had been unsatisfactory, the Court in *Garmon, supra,* 244, established the broad rule of preemption that still pertains today:

"When it is clear or may fairly be assumed that the

---

[4] On the issue of Federal labor law preemption, see generally Bartosic & Hartley, Labor Relations Law in the Private Sector, pp 25-31, Gorman, Basic Text on Labor Law Unionization and Collective Bargaining, pp 766-786.

activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law."

Furthermore, the Court made it clear that preemption was to apply even when the conduct which was subject to regulation was only "arguably" under §§ 7[5] and 8[6] of the act:

"When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."[7] *Garmon, supra,* 245.

The *Garmon* Court also recognized that, to serve these policies, the preemption doctrine had to bar more than the enforcement of state labor laws. Accordingly, all form of state control was forbidden, including the award of damages to redress private wrongs when the activity complained of is potentially subject to §§ 7 and 8 of the act.[8]

[5] 29 USC 157.

[6] 29 USC 158.

[7] There has developed also a separate strand of preemption that applies specifically when the activity in question is neither protected nor prohibited under §§ 7 or 8 of the act. Sometimes referred to as "permitted" activity, this strand of the doctrine forbids state regulation of the economic weapons that may be brought to bear in a labor dispute on the theory that Congress intended to allow the use of such tactics. See *New York Telephone Co v New York State Dep't of Labor,* 440 US 519; 99 S Ct 1328; 59 L Ed 2d 553 (1979), *Lodge 76, International Ass'n of Machinists and Aerospace Workers, AFL-CIO v Wisconsin Employment Relations Comm,* 427 US 132; 96 S Ct 2548; 49 L Ed 2d 396 (1976), *Local 20, Teamsters, Chauffeurs & Helpers Union v Morton,* 377 US 252; 84 S Ct 1253; 12 L Ed 2d 280 (1964).

[8] "Regardless of the mode adopted, to allow the States to control

The broad rule of preemption is not, however, without its exceptions. Many of these exceptions have been specifically created by Congress. For example, § 303 of the Labor Management Relations Act[9] allows suit in Federal district court by any person sustaining business or property damage as a result of certain union unfair labor practices, even though the substance of the conduct might also be cognizable by the National Labor Relations Board (NLRB). Under § 301 of the Labor Management Relations Act[10] suit may be brought in either state or Federal court for breach of a collective bargaining agreement. Section 14(c)(2) of the National Labor Relations Act, as amended by the Labor Management Reporting and Disclosure Act,[11] allows state courts and administrative agencies to assert jurisdiction over labor disputes where the NLRB has declined to exercise its jurisdiction.

There exist, in addition, judicially created exceptions arising from cases where the court has been unable to discern a congressional intent to preempt local jurisdiction over the activity involved.[12] For example, in *Vaca v Sipes*, 386 US 171;

which is the subject of national regulation would create potential frustration of national purposes." *Garmon, supra*, 244.

"Nor is it significant that California asserted its power to give damages rather than to enjoin what the Board may restrain though it could not compensate. Our concern is with delimiting areas of conduct which must be free from state regulation if national policy is to be left unhampered. Such regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme." *Garmon, supra*, 246-247.

9 29 USC 187.

10 29 USC 185.

11 29 USC 164(c)(2).

12 "[T]he Labor Management Relations Act 'leaves much to the

87 S Ct 903; 17 L Ed 2d 842 (1967), the Court held that suits for breach of a union's duty of fair representation were cognizable in state court despite the fact that the NLRB had recently held that breach of the duty amounted to an unfair labor practice under § 8.[13] See also *Bebensee v Ross Pierce Electric, Inc,* 400 Mich 233; 253 NW2d 633 (1977). The holding was based on the history of the duty, including the fact that such suits were allowed before the board had decided to exercise jurisdiction over the area, and on the unique position of the duty in the scheme of labor relations law.

Most of the cases which have resulted in judicially created exceptions to the preemption doctrine have fallen within at least one of two areas specifically left open in *Garmon:*

"[D]ue regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where

states, though Congress has refrained from telling us how much.' " *Weber v Anheuser-Busch, Inc,* 348 US 468, 480; 75 S Ct 480; 99 L Ed 546 (1955), quoting *Garner v Teamsters Local Union No 776,* 346 US 485, 488; 74 S Ct 161; 98 L Ed 228 (1953).
"A second factor that has played an important role in our shaping of the pre-emption doctrine has been the necessity to act without specific congressional direction. The precise extent to which state law must be displaced to achieve those unifying ends sought by the national legislature has never been determined by the Congress. * * * We cannot declare pre-empted all local regulation that touches or concerns in any way the complex interrelationships between employees, employers, and unions; obviously, much of this is left to the States." *Amalgamated Ass'n of Motor Coach Employees of America v Lockridge,* 403 US 274, 289; 91 S Ct 1909; 29 L Ed 2d 473 (1971).

[13] *Miranda Fuel Co, Inc,* 140 NLRB 181 (1962), *enforcement denied* 326 F2d 172 (CA 2, 1963). But see, *Rubber Workers Local 12 v National Labor Relations Board,* 368 F2d 12 (CA 5, 1966), *cert den* 389 US 837; 88 S Ct 53; 19 L Ed 2d 99 (1967), *Truck Drivers and Helpers Local Union 568 v National Labor Relations Board,* 126 App DC 360; 379 F2d 137 (1967).

the activity regulated was a *merely peripheral concern of the Labor Management Relations Act.* See *International Ass'n of Machinists v Gonzales,* 356 US 617 [2 L Ed 2d 1018, 78 S Ct 923]. Or where the regulated conduct *touched interests so deeply rooted in local feeling and responsibility* that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." *Garmon, supra,* 243-244. (Emphasis added.) (Footnote omitted.)[14]

These exceptions apply most directly to conduct arguably *prohibited,* rather than to arguably *protected* conduct. *Sears, supra,* 194-197.

In *Linn v United Plant Guard Workers of America,* 383 US 53; 86 S Ct 657; 15 L Ed 2d 582 (1966), the Court applied both *Garmon* exceptions in upholding Federal court diversity jurisdiction in a libel action. During an organizing campaign, leaflets had been circulated which allegedly libeled an official of the employer. Although the Court noted that even the most robust language is protected in the context of labor relations, that protection was terminated at the point where the language becomes malicious libel. The controversy was, nevertheless, within *Garmon's* broad sweep since circulation of the leaflets was arguably an unfair labor practice under § 8(b)(1)(A) of the act. The Court refused to find jurisdiction preempted, however, under both the "peripheral concern" and "deeply rooted local feeling" exceptions. Several factors led the Court to this conclusion. First, and perhaps most important, since the conduct sought to be

[14] Violence and threats of violence have often been cited as the classic examples of such conduct. *Garmon, supra,* 247-248, *International Union, United Automobile Workers of America v Russell,* 356 US 634; 78 S Ct 932; 2 L Ed 2d 1030 (1958), *Youngdahl v Rainfair, Inc,* 355 US 131; 78 S Ct 206; 2 L Ed 2d 151 (1957), *United Construction Workers v Laburnum Construction Corp,* 347 US 656; 74 S Ct 833; 98 L Ed 1025 (1954).

reached in the tort action was not protected under the act, only arguably prohibited, there was no danger of state law restricting conduct protected by Congress. The Court also noted that the focus of an unfair labor practice charge before the board would be on the coercive nature of the statement rather than on its maliciously defamatory characteristics and that the board would be unable to award damages for harm to reputation. Moreover, the tort action could be adjudicated without reference to the board's concern over the coercive nature of such statements in the context of a representation election. Damages could only be awarded for conduct that was defamatory, not simply coercive. Finally, the Court was of the opinion that an "overriding state interest" existed in the protection of citizens from malicious libel.

In *Farmer v Local 25, United Brotherhood of Carpenters and Joiners of America,* 430 US 290; 97 S Ct 1056; 51 L Ed 2d 338 (1977), the Court was faced with a case that was similar to *Linn.* In *Farmer,* plaintiff brought suit against his union and others in state court alleging discrimination in hiring hall referrals, breach of contract, and the intentional infliction of emotional distress. The trial court sustained a demurrer to the discrimination and contract claims on the basis of Federal preemption but allowed the tort claim to go to trial. On appeal, the Supreme Court noted the broad rule of *Garmon* as well as its exceptions.

The specific conduct complained of, "outrageous conduct, threats, intimidation, and words", was not seen as protected by the act, but, as in *Linn,* this conduct was arguably prohibited by the act. As a result, a rigid application of *Garmon* would have required that state court jurisdiction be preempted. The Court declined to read *Garmon* so

strictly, however, and based on factors similar to those present in *Linn,* found no congressional intention to preempt the tort cause of action. If the plaintiff had filed with the board, the focus of inquiry would have been on whether the union had practiced unlawful discrimination. The state court action, on the other hand, involved a determination of whether the union intentionally engaged in outrageous conduct resulting in mental distress. The state court could award damages for the mental distress where the board could not, and, in awarding such damages, the state court would not be involved with conduct that was the concern of the board.

The Court was careful to point out, however, that state and Federal courts were not vested with jurisdiction simply because the conduct complained of was only prohibited by the act. While union discrimination will certainly cause some anxiety and emotional distress, the Court held that the "outrageous conduct", which under state law was the gravamen of the cause of action, could not be shown by discrimination alone. Discrimination is the province of the board and due regard for the Federal regulatory scheme required that claims of discrimination be presented there. Where the potential plaintiff could point to outrageous conduct distinct from the actual discrimination, although related to it, then the courts could proceed.

In *Sears, Roebuck & Co v San Diego County Dist Council of Carpenters,* 436 US 180; 98 S Ct 1745; 56 L Ed 2d 209 (1978), the Court was faced with the issue of whether state court jurisdiction to enjoin certain peaceful picketing was preempted by Federal labor law. The pickets appeared at a Sears retail outlet after the union determined that

carpentry work was taking place at the store without the use of workers from the local hiring hall and after attempts to resolve the dispute were unsuccessful. The pickets were stationed on Sears property and were requested to leave by the store security manager. The union refused unless forced by legal action. Sears then filed suit and obtained an injunction against the trespass, at which point the pickets moved to the nearby public sidewalk.

Unlike both *Linn* and *Farmer,* where the activity complained of enjoyed no protection, the Court in *Sears* proceeded on the assumption that the picketing could arguably be either protected under § 7 or prohibited under § 8. Once again refusing to apply *Garmon* in an overly rigid manner, the Court undertook an analysis of the applicable exceptions. *Sears* is particularly noteworthy for the fact that the Court examined separately the arguably prohibited and arguably protected nature of the union's conduct. This sort of analysis had been foreshadowed by both *Linn* and *Farmer,* cases involving prohibited conduct, where the Court had implied that a more serious preemption problem existed when the conduct sought to be regulated by the courts was protected by Federal law.[15] The fundamental distinction between these

---

[15] This approach had, however, been previously rejected as unsatisfactory:

"Finally, treating differently judicial power to deal with conduct protected by the Act from that prohibited by it would likewise be unsatisfactory. Both areas equally involve conduct whose legality is governed by federal law, the application of which Congress committed to the Board, not courts." (Footnote omitted.) *Amalgamated Ass'n of Motor Coach Employees v Lockridge,* 403 US 274, 290; 91 S Ct 1909; 29 L Ed 2d 473 (1971).

The above-quoted language was apparently made in response to the dissent in *Lockridge* by Justice White, who argued for differing standards based on the difficulty of presenting to the board the issue of whether certain conduct is protected under the act. As is discussed in text, *infra,* similar concerns seem to have played a role in the

two strands of *Garmon* is that when a state at-
tempts to prohibit, through whatever means, con-
duct actually protected by Federal law constitu-
tional considerations of Federal supremacy are
invoked to a greater extent. A state may not
prohibit what Federal law protects. Such concerns
are not applicable, however, when the state merely
seeks to prohibit different aspects of the same
conduct that Federal law prohibits, and where
there is no danger of the state becoming involved
with those aspects of the conduct that are the
concern of the Federal law.

Examining first the arguably prohibited nature
of the union's conduct in the *Sears* case, the Court,
applying the rationale developed in *Linn* and
*Farmer,* held that preemption did not work to
prohibit state court jurisdiction. If Sears had filed
an unfair labor practice charge the inquiry would
have concerned the *intent* of the picketing. The
state court action, however, involved the trespas-
sory nature of the picketing and was concerned
only with the *location* of the pickets. Accordingly,
the state court action could proceed without any
need to examine those aspects of the conduct
which were the concern of Federal law and with-
out danger of conflicting regulation.

In analyzing the conduct's arguably protected
nature, the Court first noted that it was impossible
for the state to legitimately grant the relief re-
quested without undertaking to determine if the
conduct was protected under Federal law. Accord-
ingly, Sears would ordinarily be required to pursue
the issue through the mechanisms of the National
Labor Relations Board rather than the courts. The
Court was unwilling to end the matter here, how-

*Sears* Court's decision to treat the issues of prohibition and protection
in different manners.

ever, due to the practical limitations on such a course of action. Sears could not directly obtain a decision on the question of whether the union's trespass was protected under Federal law. While it could indirectly bring the matter within the board's jurisdiction by ordering the pickets to leave, thereby inducing the union to file an unfair labor practice charge alleging interference with § 7 rights, the union declined the invitation and instead indicated pickets would be removed from Sears' property only under legal compulsion. This situation led the Court to adopt another exception to the preemption doctrine applicable to cases involving arguably protected conduct:

"The primary-jurisdiction rationale justifies pre-emption only in situations in which an aggrieved party has a reasonable opportunity either to invoke the Board's jurisdiction himself or else to induce his adversary to do so.

*    *    *

"The primary-jurisdiction rationale unquestionably requires that when the same controversy may be presented to the state court or the NLRB, it must be presented to the Board. But that rationale does not extend to cases in which an employer has no acceptable method of invoking, or inducing the Union to invoke, the jurisdiction of the Board. We are therefore persuaded that the primary-jurisdiction rationale does not provide a *sufficient* justification for pre-empting state jurisdiction over arguably protected conduct when the party who could have presented the protection issue to the Board has not done so and the other party to the dispute has no acceptable means of doing so." *Sears, supra,* 201, 202-203. (Emphasis in original, footnotes omitted.)

This said, the Court immediately placed a strong limitation on this new exception:

"This conclusion does not, however, necessarily foreclose the possibility that pre-emption may be appropriate. The danger of state interference with federally protected conduct is the principal concern of the second branch of the Garmon doctrine. To allow the exercise of state jurisdiction in certain contexts might create a significant risk of misinterpretation of federal law and the consequent prohibition of protected conduct. In those circumstances, it might be reasonable to infer that Congress preferred the costs inherent in a jurisdictional hiatus to the frustration of national labor policy which might accompany the exercise of state jurisdiction. Thus, the acceptability of 'arguable protection' as a justification for pre-emption in a given class of cases is, at least in part, a function of the strength of the argument that § 7 does in fact protect the disputed conduct." *Sears, supra,* 203.

The result of this language would appear to be that when the case for § 7 protection is a strong one state court jurisdiction is preempted even when the party aggrieved by the conduct is, practically speaking, unable to take the case to the board instead. Analyzing the union's conduct in the *Sears* case in light of this standard, the Court concluded that, since experience showed the claim of protection to be a weak one, state court jurisdiction was not preempted.

### III

In applying the preemption doctrine to the facts of the instant case, we must concentrate on the activities of the union. While Morgan's actions were certainly of a violent and tortious, even criminal, nature, there is no claim that, in assaulting Bescoe, Morgan was in some manner acting on behalf of the laborers' union. Morgan was simply a dues paying member of the union, not an officer, agent, or steward.

Plaintiffs' theory of the case, as stated to the jury during the trial court's instructions, was as follows:

"It is the theory of the plaintiff's case that Defendant Howard Morgan was referred to the job for the Serstel Company as the foreman; that after he was sent to this job, he made threats of violence against the superintendent, Charles Larimer. Larimer then attempted to fire Morgan and called the union business manager in attempting to do so. The union sent out its business agent, who told Larimer that he could not fire Morgan and that Morgan must remain on the job as foreman, even though the agreement between the union and the company provided that only the company had the right to hire or fire foremen.

"In addition, the plaintiff's theory goes on and says that on at least three occasions Larimer tried to fire Morgan. Each time he was visited by a union business agent, who told Larimer that the union would 'take care of Morgan.' It is the theory of plaintiff's case that this promising to 'take care of Morgan' made the union liable for Morgan's actions; further, that the union is responsible in certain situations for the acts of its members and that this promise from the union through its business agent or representative made the union responsible and liable for damages caused by Morgan.

"Further, the plaintiff's theory is that it was the duty of the union, once it was informed of Morgan's threats of violence, to take whatever action was necessary of a prudent union to insure or protect fellow workmen from injury caused by actions of violence of Morgan; and that the union breached that duty by forcing Serstel to not only keep Morgan on the job, but to keep him in a position of authority, a position to which he was not entitled, and that the plaintiff's injury is a proximate result of that breach."

On the basis of this theory, the trial court sent the case to the jury on general negligence instructions.

The trial court's recitation of plaintiffs' theory

appears to focus on three sorts of union activity: (1) union efforts to prevent Serstel from firing Morgan; (2) the statement of a union agent that he would "take care of Morgan", which, it is argued, makes the union liable for Morgan's acts, and (3) the union's failure to insure and protect other workers on the site once it had been informed of Morgan's threats of violence.[16] We do not believe that the conduct alleged in the third area is preempted by Federal labor law. As it is stated in a negative, it does not involve affirmative activity that could be said to be protected by § 7 of the act. Neither does the failure to insure and protect appear to be prohibited by § 8. While not preempted, the question of whether there exists such a duty to insure and protect, the breach of which would result in the union's liability, will be discussed in § IV of this opinion, *infra*. We hold, however, that the preemption doctrine deprived the trial court of subject matter jurisdiction over the first two areas of union activity.

Our inquiry begins with the issue of whether the activities of the union are arguably protected under § 7 or arguably prohibited under § 8 of the act. Our examination of § 8 reveals no basis for holding that any of these activities are prohibited by the act, and plaintiffs have not suggested otherwise. Our analysis will, accordingly, proceed to the question of whether the activities are protected under § 7.

Section 7 is a short, yet broad, statement of the rights of employees in the formation of labor unions and in concerted activity. It provides:

---

[16] Plaintiffs' theory also makes much of the union's referral of Morgan to Serstel, particularly his referral as foreman. The union had been granted partial summary judgment on the issue of negligent referral, however, and no appeal was taken from that ruling, so that the referral itself was not part of the case as it went to the jury.

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title." 29 USC 157.

It appears to us that the activity complained of in the first two areas above are clearly protected. Essentially, plaintiffs complain of the union's peaceful efforts to intercede on behalf of a fellow employee who had managed to get himself into trouble. This is precisely the sort of conduct that is expected of labor unions. While the agent of the union may have told the employer that it "couldn't" fire Morgan, or that it would "take care" of Morgan, such statements do not serve to remove such activity from Federal protection. Indeed, the record reflects that such efforts usually proved successful, even if only for the moment. It is undisputed that each time the union was called to the work site in response to a problem concerning Morgan the agent would speak with the representative of the employer and with Morgan and that tensions would ease. The national labor policy as expressed in the act and in the decisions of the board clearly supports the view that unions are protected when they intercede on behalf of an employee in circumstances such as those before us now. Our conclusion in this regard is bolstered by the fact that had the union not acted as it did, it would have most likely been guilty of an unfair labor practice under § 8.

Our inquiry does not end here, as *Sears* has

created an exception to the preemption doctrine in cases where the activity involved is arguably protected. As noted above, that exception holds that, where an aggrieved party is not able to present the protection issue to the board and also unable to induce the party who could to do so, state court jurisdiction is not preempted. While the factual circumstances of the instant case are not directly in point as we do not perceive how either Bescoe or the union could have presented the protection issue to the board, the concerns raised in *Sears* are as a result raised here to perhaps an even greater extent. As was also noted above, however, this exception is a narrow one and the greater the argument for § 7 protection the greater the chance that preemption will apply even if it means that a party's claims have no forum. We believe that such an analysis, applied to the instant case, results in the preemption of state court jurisdiction over plaintiffs' claims to the extent that those claims are based on the union's efforts, in this case, to preserve Morgan's job.

The rationale of this analysis, as clearly stated by the Supreme Court in *Sears,* is that when conduct is protected by Federal law the possibility of state regulation that would cut back on such protection must be eliminated. This would be the result in the instant case if jurisdiction were upheld. If the union's peaceful intercession on behalf of Morgan were held wrongful, as it in essence was in the instant case, the State of Michigan would be holding unlawful that which is protected by Federal law and informing the union that it should instead have engaged in conduct that would most likely have violated § 8 of the act. The claim that such a holding would leave plaintiffs without a forum is minimized by the fact that the strength

of the protection points to the improbability of the recognition of a duty in tort to refrain from such conduct and the improbability of plaintiffs obtaining a remedy for the allegedly wrongful activity in any forum.

Plaintiffs argue that as the protection asserted by the union in the instant case regards the duty of fair representation, which stems from the principle of exclusive representation as found in § 9[17] of the act, the conduct is not under §§ 7 or 8 and their suit is not preempted. Plaintiffs also note that suits by a union member against his or her union for breach of the duty of fair representation are maintainable in state and Federal court. *Vaca v Sipes, supra.* This argument does not help plaintiffs for two reasons. First, while the duty of fair representation evolved in full form from the exclusive representation principle of § 9, a union, while engaged in the fair representation of its members, is also engaged in activity protected under § 7. While an alleged breach of the duty may be heard in state court, it may also be brought before the board as an unfair labor practice.[18] Second, even in cases where the facts suggest the duty may have actually been breached, preemption has been held to apply unless the suit has been specifically put forth and argued as a suit for the breach of the duty of fair representation. *Amalgamated Ass'n of Motor Coach Employees v Lockridge,* 403 US 274, 299-300; 91 S Ct 1909; 29 L Ed 2d 473 (1971), *Bebensee v Ross Pierce Electric, Inc,* 400 Mich 233; 253 NW2d 633 (1977). The exception in *Vaca* was developed in response to the practical difficulties which faced an employee seeking to redress claims against his or her union. We do not believe it was

[17] 29 USC 159.
[18] See note 12, *supra.*

meant to apply to every case in which the duty of fair representation is in some manner involved, especially to cases where it can only be said the duty was scrupulously adhered to.

We should not be understood as holding that persons in the position of plaintiff are always precluded from recovering against a union. Had plaintiff been able to plead and prove willful misconduct on the part of the defendant union that did not enjoy Federal protection, preemption might well not apply under the exceptions enunciated in *Linn* and *Garmon*. That question is not, however, presently before us.

## IV

The only allegation not preempted and thus properly before the trial court is plaintiffs' theory that the union had a duty to take whatever steps were necessary to insure and protect workers on the job site once it learned of Morgan's threats of violence. Whether such a duty exists is a question of state law.

In support of their argument for such a duty, plaintiffs cite 2 Restatement Torts, 2d, § 324A, p 142.[19] Under this section of the Restatement a party (the union) may be liable to a third party (Bescoe) when it has undertaken to perform a duty owed by another (Serstel and Great Lakes) to the

---

[19] "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

third party and has failed to exercise reasonable care with physical harm resulting to the third party. In the context of the instant case, plaintiffs argue that the union undertook at least partial performance of the employer's duty to provide a safe work place, and that it failed to exercise reasonable care in discharging this duty resulting in Bescoe's injuries.

Section 324A has been adopted in Michigan and applied in cases where it is argued that an insurance carrier has undertaken the duty to inspect an employer's premises, and has negligently carried out such a duty with injury resulting to an employee. See *Smith v Allendale Mutual Ins Co,* 79 Mich App 351; 261 NW2d 561 (1977), *lv gtd* 406 Mich 969 (1979), *Watson v Employers' Ins Co of Wausau,* 50 Mich App 597; 213 NW2d 765 (1973), *Ray v Transamerica Ins Co,* 46 Mich App 647; 208 NW2d 610 (1973).[20] While the question of whether a party has undertaken a duty for another is one of fact and is, as such, for the jury, *Ray, supra,* 654, there must be evidence that the union actively undertook the employer's duty to provide a safe work place as regards Morgan. *Smith, supra,* 356, *Ray, supra,* 654. The evidence must show that the employer relinquished control over this aspect of its operation in favor of the union. *Watson, supra,* 601-602.

We believe this analysis reveals no duty on the part of the union in the instant case. Nothing in the record can lead to the conclusion that Serstel relinquished its right to fire Morgan. Certainly the union did not have this authority. The fact that the union successfully bargained with Serstel in

---

[20] At least as to worker's compensation insurers, the rule has been abrogated. MCL 418.131; MSA 17.237(131), MCL 418.827(8); MSA 17.237(827)(8), see *Shwary v Cranetrol Corp,* 88 Mich App 264; 276 NW2d 882 (1979), *lv den* 406 Mich 979 (1979).

keeping Morgan from being fired does not place responsibility for his acts on the shoulders of the union. If Morgan's presence on Zug Island created an unreasonable risk of harm to his fellow employees such that he should have been removed from the work site, then it was incumbent on his employer to see to it. The premises continued to be maintained by Great Lakes which through the means of a security force controlled access to the island. The union could not have fired Morgan nor unilaterally prevented his presence at the work place. There being insufficient evidence to support a duty on the part of the union to insure and protect the workers at the job site, the trial court's judgment cannot be supported on this theory.

## V

The judgment of the trial court is reversed and this cause is remanded for entry of judgment notwithstanding the verdict.

Reversed.