SOWELS v LABORERS' INTERNATIONAL UNION OF NORTH AMERICA

Docket No. 52394. Submitted June 19, 1981, at Lansing.—Decided October 23, 1981.

Alfred L. Sowels and Alice Sowels brought an action for damages against the Laborers' International Union of North America, Williard L. Hammac, Wayman D. Gray, Gary Ellison, Kenneth Raines, and International Laborers' Union Local 465. Mr. Sowels had been injured in an attack upon him by the individual defendants. Sowels, a member of the union local as are the individual defendants, was in a supervisory position and had laid off four workers including Hammac and Gray. The plaintiffs alleged that the international union was negligent in failing to supervise and control Local 465 and its members and in failing to warn Sowels of the violent propensities of the members of the local. They also alleged that the international breached a contractual obligation to protect him, as a member of the union, from violent members of the union. The Oakland Circuit Court, Hilda R. Gage, J., granted summary judgment in favor of the international union, and the plaintiffs appeal. *Held:*

1. There was no duty on the part of the international union to prevent the harm to Sowels in the absence of actual knowledge by the international of the impending attack on Sowels. Plaintiffs did not allege that the international had such knowledge.

2. Plaintiffs seek, on appeal, to impose liability on the theory that the international union, as the agent of its members, owed

REFERENCES FOR POINTS IN HEADNOTES

[1] 61A Am Jur 2d, Pleading § 231.

[2] 74 Am Jur 2d, Torts § 26.

[3, 4] 48 Am Jur 2d, Labor and Labor Relations § 464.

. Liability of labor union or its membership for torts committed by officers, members, pickets, or others, in connection with lawful primary labor activities. 36 ALR3d 405.

[5] 48 Am Jur 2d, Labor and Labor Relations § 398.

[6] 5 Am Jur 2d, Appeal and Error §§ 545, 552, 700.

certain duties to its members including the duty to protect them from the violent acts of other members. This theory has been waived because it was not argued below. The duty of the international is limited to the duty to fairly represent the interests of its members in matters of employment.

3. There was no contractual relationship between the international union and its individual members.

Affirmed.

1. JUDGMENTS — SUMMARY JUDGMENT — COURT RULES.

Summary judgment for failure to state a claim upon which relief can be granted is proper only if, upon examination of the pleadings and accepting the plaintiffs' well-pled allegations as true, it can be determined that the claim is so clearly unenforceable as a matter of law that no factual development could possibly sustain it (GCR 1963, 117.2[1]).

2. TORTS — DUTY TO PREVENT INJURIES.

The question of whether a defendant owes a plaintiff any duty to prevent the plaintiff's injuries is a legal question to be decided by the court and is essentially a question of whether the relationship between the defendant and the injured person gives rise to any legal obligation on the defendant's part for the benefit of the injured person.

3. LABOR RELATIONS — LABOR UNIONS — LIABILITY FOR UNLAWFUL ACTS.

The federal statute providing that a labor organization participating in a labor dispute shall not be responsible for the unlawful acts of individual members except upon proof of the organization's participation in, authorization of, or ratification of the unlawful acts applies to tort claims arising out of labor disputes and brought in state courts (29 USCA 106).

4. LABOR RELATIONS — LABOR UNIONS — LIABILITY FOR UNLAWFUL ACTS.

A defendant labor union was properly held not to be liable for the conduct of some of its members in assaulting a plaintiff, based upon allegations that the union had knowledge of the "violent propensities" of its members and of prior threats of violence made by its members where the union owed no duty to the plaintiff to protect him from violent acts of its members or to warn him that its members may resort to violence, and the plaintiff did not allege that the union had prior knowledge of the particular attack which led to the plaintiff's injuries.

5. LABOR RELATIONS — LABOR UNIONS — DUTY TO MEMBERS.

The duty owed by a labor union to its members arises from the collective-bargaining relationship between them and consists of the basic duty to fairly represent the interests of all of the union's members in matters of employment.

6. APPEAL — WAIVER OF ISSUE — FAILURE TO CITE AUTHORITY.

Appellate review of an issue is waived where the appellant failed to raise the issue below; likewise, appellate review of an issue is precluded where no authority is cited in support of the appellant's position on the issue.

*Raymond L. Krell, P.C.* (by *Alan G. Davis*), for plaintiffs.

*Miller, Cohen, Martens & Sugerman, P.C.* (by *William L. Martens, Duane F. Ice,* and *John H. Willems*), for defendant Laborers' International Union of North America.

Before: T. M. BURNS, P.J., and D. E. HOLBROOK, JR., and K. B. GLASER,* JJ.

PER CURIAM. Plaintiffs appeal an order of summary judgment entered pursuant to GCR 1963, 117.2(1), failure to state a claim upon which relief can be granted, in favor of defendant Laborers' International Union of North America (hereinafter the international).

Summary judgment under this sub-rule is proper only if, after an examination of the pleadings, and accepting plaintiff's well-pleaded allegations as true, a determination can be made that plaintiff's claim is "so clearly unenforceable as a matter of law that no factual development could possibly sustain it". *Gartside v Young Men's Christian Ass'n,* 87 Mich App 335, 338; 274 NW2d 58 (1978).

Plaintiffs' complaint alleged that in September

---

* Circuit judge, sitting on the Court of Appeals by assignment.

of 1976, Alfred Sowels (hereinafter plaintiff), himself a member of defendant International Laborers' Union, Local 465 (hereinafter Local 465), was employed by a contractor in a supervisory position at the Enrico Fermi plant in Monroe, Michigan. Local 465 assigned 20 workers to the construction site, including defendants Hammac, Gray, Ellison, and Raines. Local 465's agent insisted that Sowels appoint Hammac as a foreman, and Sowels refused. Sowels warned Hammac about his refusal to continue working as instructed, to which Hammac exhibited a hostile and aggressive attitude. During the last week of September, 1976, Sowels laid off four of the workers from Local 465, including Hammac and Gray.

On October 1, 1976, as Sowels left his home, he was stopped and attacked by Hammac, Ellison, Gray, and Raines, who placed a blanket over his head and beat him. Among the injuries suffered by Sowels were extensive fractures of both legs, which left him permanently disabled.

Plaintiffs' complaint sought to hold the international liable on at least two theories of negligence. Plaintiffs' second amended complaint also sought to impose liability on the international on the basis that the international breached a contractual obligation owed plaintiff as a dues-paying member.

Plaintiffs allege that the international was negligent by first, failing to supervise and control Local 465 and its members, and second, failing to warn plaintiff of the violent propensities of members of Local 465. The issue here primarily involves whether the international owed plaintiff any duty to prevent the alleged harm. Whether such a duty exists is a legal question to be decided by the court and "is essentially a question of whether the relationship between the actor and the injured person

gives rise to any legal obligation on the actor's part for the benefit of the injured person". *Moning v Alfono,* 400 Mich 425, 438-439; 254 NW2d 759 (1977) (footnote omitted). Where there is no legal duty, there can be no actionable negligence. *Butrick v Snyder,* 236 Mich 300, 306; 210 NW 311 (1926).

Plaintiffs' burden of establishing this element of negligence becomes substantially heavier in the face of § 6 of the Norris-LaGuardia Act which states:

"No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute, shall be held responsible or liable in any court of the United States for the unlawful acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof." 29 USCA 106.

This section was held applicable to tort claims in state courts arising out of labor disputes in *United Mine Workers of America v Gibbs,* 383 US 715, 736-737; 86 S Ct 1130; 16 L Ed 2d 218 (1966). The policy underlying § 6 has been stated as follows:

"It has been clear to Congress for many years that imposition upon unions of vicarious liability for the unauthorized acts of individuals could easily mean the elimination of labor unions as a social institution in America. * * *

"Irresponsible or violent acts by individual workers (or by *agents provacateur)* if automatically attributable to the union on the scene could, of course, serve to destroy it. But such vicarious liability is repugnant to due process of law." *North American Coal Corp v Local 2262, United Mine Workers of America,* 497 F2d 459, 466 (CA 6, 1974).

Given this policy and the broad definition of a labor dispute, 29 USCA 152(9), we find the section applicable here.

Plaintiffs seek to impose a duty on the international by alleging that the international had knowledge of the "dangerous propensities" of Local 465 members, and actual notice and knowledge of threats of violence made by Local 465 members toward the management of plaintiff's employer. Assuming them to be true, these allegations fall far short of constituting participation in, authorization or ratification of, the assault on plaintiff by the named members of Local 465.

Significantly, plaintiffs did not allege that the international had knowledge that this particular attack would take place, let alone allege that the international knew of the dangerous propensities of, or threats made by, the specific members of Local 465 who perpetrated the assault. While making no reference to § 6 of the Norris-LaGuardia Act, this Court in *Bescoe v Laborers' Union Local No 334,* 98 Mich App 389, 411-413; 295 NW2d 892 (1980), held that the employer bears the duty of providing a safe workplace, and absent a showing that the union had undertaken the employer's duty, the union could not be held liable for an assault by one of its members, even though it knew of that member's repeated threats of violence.

The duty of the international to prevent violent acts of its members cannot rest on the mere union-member relationship, since a union, its local affiliates, and individual members are distinct entities, and one cannot be held liable for the acts of another. *United States v White,* 322 US 694; 64 S Ct 1248; 88 L Ed 1542 (1944), *Coronado Coal Co v United Mine Workers of America,* 268 US 295; 45

S Ct 551; 69 L Ed 963 (1925). Plaintiffs did not seek in their complaint to impose liability on the international on a theory of agency, and even where agency is alleged, there must be a showing that the union participated in, authorized or ratified the tortious conduct. *Kerry Coal Co v United Mine Workers of America,* 637 F2d 957 (CA 3, 1981), *James R Snyder Co, Inc v Edward Rose & Sons, Inc,* 546 F2d 206 (CA 6, 1976), *Gonzales v Oil, Chemical & Atomic Workers International Union,* 77 NM 61; 419 P2d 257 (1966), *United Brotherhood of Carpenters & Joiners of America v Humphreys,* 203 Va 781; 127 SE2d 98 (1962).

Plaintiffs cite a number of cases in which a parent union was held liable for damages under Title VII of the Civil Rights Act of 1964, 42 USC 2000e, for the discriminatory practices of its local affiliates. In those cases, however, a direct link between the parent union and the unlawful discrimination was present. For example, in *Kaplan v International Alliance of Theatrical & Stage Employees & Motion Picture Machine Operators of United States & Canada,* 525 F2d 1354, 1359 (CA 9, 1975), provisions of the collective-bargaining agreement executed by the local affiliate were found to perpetuate discrimination. Because the bargaining agreement was subject to the approval of the international, and as the international was a signatory of the collective-bargaining agreement, liability was based upon the direct involvement of the international. Likewise, in *Freeman v Motor Convoy, Inc,* 409 F Supp 1100, 1108-1112 (ND Ga, 1976), liability of the parent union was based upon the discriminatory effect of provisions of the collective-bargaining agreement, and the bargaining agreement being executed and implemented on at least the implicit authority of the international.

Consistent with those decisions is *Movement for Opportunity & Equality v General Motors Corp,* 622 F2d 1235, 1245 (CA 7, 1980), where the alleged discrimination was not connected to the collective-bargaining agreement. Adopting the opinion of the district court, the circuit court of appeals held that the parent had no control over its local affiliate, and in the absence of a showing of the parent's direct involvement it could not be held liable for the alleged discriminatory practices.

The preceding lines of authority unequivocally support the trial court's ruling that, as a matter of law, the international could not be held liable for the assaultive conduct of its members, based upon allegations that the international had actual knowledge of the "violent propensities" of its members and actual knowledge of prior threats of violence made by its members. The international owed no duty to plaintiff either to protect him from violent acts of its members, or to warn him that its members may resort to violence if crossed. Had plaintiffs alleged that the international knew that this particular attack by the named members was impending, a cause of action may have been stated. Plaintiffs were twice given the opportunity to amend their complaint and were given additional time for discovery. We can only assume that allegations which would directly link the international with the assault upon plaintiff could not be supported.

Plaintiffs, for the first time on this appeal, seek to impose liability on the international under a theory of agency. By failing to raise this issue below, plaintiffs have waived it on appeal. *Hayes v Booth Newspapers, Inc,* 97 Mich App 758; 295 NW2d 858 (1980). Furthermore, plaintiffs' claim of liability under this theory is not viable. Plaintiffs

do not contend that the members who perpetrated the attack were acting as agents of the union, but that the international, as the agent of its members, including plaintiff, owed plaintiff certain fiduciary duties, including the duty to protect him from the violent acts of other members. The duty owed plaintiff by the international arises from the collective-bargaining relationship between them, and has been described as the basic duty to fairly represent the interests of all of its members in matters of employment. See *Vaca v Sipes,* 386 US 171, 177; 87 S Ct 903; 17 L Ed 2d 842 (1967). In the absence of any authority to the contrary, we refuse to expand this limited relationship to impose a duty on the international to protect its members from any harm which may be connected to the workplace.

Plaintiffs amended their complaint to allege that the international owed plaintiff, as a dues-paying member of the union, a contractual duty to protect him from violent acts of fellow members and breached that duty by failing to supervise and control its local affiliates. Plaintiffs' failure to cite any authority in support of this novel proposition precludes our appellate review. *Stanek v Bergeon,* 89 Mich App 283, 285; 279 NW2d 296 (1979). Furthermore, plaintiffs base this contractual obligation on article II, § 1 of the international's constitution, which sets forth the general goals and purposes of the union. Nothing in this document purports to bind the international to a contract with an individual member, obliging the international to protect that member from acts of violence by third parties, including the acts of fellow members.

As to the international's contention that federal law preempts state adjudication of this matter, we

defer to the analysis in *Bescoe v Laborers' Union Local No 334, supra,* 411, which ultimately held that whether a union had the duty to protect workers from violent acts of its members was a question of state law and was not preempted by federal labor law.

The decision of the trial court is affirmed. Costs to defendant.